**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**OCALA DIVISION**

CHERYL RAFFERTY, on behalf of
herself and all others similarly situated,

      Plaintiff,                          Case No: 5:17-cv-426-Oc-40PRL

v.

RETRIEVAL-MASTERS CREDITORS
BUREAU, INC., doing business as
RMCB COLLECTION AGENCY, and
John Does 1-25.

      Defendants.
--------------------------------------------------------/

**MOTION FOR JUDGMENT ON THE PLEADINGS**
**OR IN THE ALTERNATIVE FOR PARTIAL**
**SUMMARY JUDGMENT**

Plaintiff, Cheryl Rafferty, moves for Judgment on the Pleadings or in the

alternative for Partial Summary Judgment in light of the answer filed by

Defendant, Retrieval-Masters Creditors Bureau, Inc. and the collections letter it

attached as Exhibit 1 thereto.  In short, the Defendant's Answer leaves no factual

dispute over the letter it sent Plaintiff. As Defendant's Answer put it, "Exhibit 1 to

the Answer [i.e. the collections letter at issue] speaks for itself".  *See* Answer, Doc.

13 at paragraphs 9, 16, 17, 22, 23, 28 and 37. As a matter of law, that letter violates

the Fair Debt Collections Practices Act ("FDCPA").

**I.**      **SUMMARY OF THE COMPLAINT'S ALLEGATIONS**

On June 7, 2017, Swiss Colony placed Plaintiff's account with Defendant for

the purpose of collection of an alleged personal debt. *See* paragraph 16 of the

Complaint.  Defendant then mailed to Plaintiff a letter attempting to collect it. *Id.* at paragraph 17.  A copy of the collections letter (hereinafter referred to as "the letter") is attached to both Plaintiff's Complaint as Exhibit A as to Defendant's Answer as Exhibit 1.

The letter states on its front side that Plaintiff's "account has been outstanding for some time and our client has informed us that this has been reported to a credit bureau." *Id.* It continues by stating that "Now is the time for you to address this seriously past due account. Your payment in full in the amount of **$440.90** is necessary." (bold in original). *Id.* Its front side continues by directing Plaintiff twice to send the money to Defendants in the enclosed envelope. *Id.* ("Please send your check or money order to us in the enclosed envelope made payable to Retrieval Masters Creditors Bureau" and "**Detach and return this portion with payment using enclosed envelope**.") (emphasis in original). It also states, "Amount Due" in font double or triple the size of any of the other fonts used in the letter inside a large red box.  *Id.*  The front also contains the headline[1] "IMPORTANT NOTICE" three times down its right side, while the back side contains no such labeling and, instead, is in plain small font.  *Id.*

Although there is ample room for the disclosure to Plaintiff regarding her rights to dispute the debt to be on the font of the notice, Defendants intentionally

---

[1] A validation notice may be deemed "overshadowed" when contradictory language is in "screaming headlines" or the notice language is difficult to read because it is in fine print, faint print, or confusing typeface. *See Peter v. GC Services*, 310 F.3d 344, 349 n. 2 (5th Cir. 2002).

regulated that validation notice to the back side of the June 7, 2017 letter.[2] *Id.*

Moreover, prior to the validation notice, Defendant added this extra language

directed to "consumers": "The disclosures below are required by state or federal law.

This is not intended to be a complete statement of all rights consumers may have

under state and federal law." *Id.* Finally, the back side of the letter prominently

displays a third payment instruction, such as the direction to "Return the bottom of

portion with your check, credit card information or money order." *Id.*

## II.   FACTUAL ALLEGATIONS ADMITTED BY THE DEFENDANT'S ANSWER

The facts admitted by Defendant's answer and affirmative defenses show

there is no triable issue of fact regarding Defendant's liability. Answering

paragraph 8 of the Complaint, Defendant admits that its business includes the

collection of unpaid, outstanding account balances that are owed to its clients. In

paragraph 9, Defendant attaches a true and correct copy of the letter at issue in this

case as Exhibit 1. *See also* answer to paragraphs 16 – 20, 22 – 23. In response to

paragraph 10 of the Complaint, Defendant admits that from time to time the U.S.

Mail is used to mail letters on unpaid, outstanding account balances it is collecting

on behalf of its clients.  Paragraph 36 of the answer admits that the collection letter

was accompanied by a return envelope.

---

[2] Debt Validation, or "debt verification", refers to a consumer's right to challenge a debt and/or receive written verification of a debt from a debt collector. The right to dispute the debt and receive validation are part of the consumer's rights under the FDCPA and are set out in §809 of that act, which has been codified in Title 15, Section 1692-1692p of the United States Code.

Defendant pled three affirmative defenses. The first two are inapplicable because Plaintiff is claiming statutory damages - not actual damages. In its third defense, Defendant claims that its conduct "was not intentional and would have resulted from a bona fide error notwithstanding the maintenance of procedures reasonably adapted to avoid such error." This defense is an apparent reference to 15 U.S. Code § 1692k(c). However, as discussed more thoroughly below, this defense is also inapplicable to this case because the bona fide error defense under Section 1692k(c) only applies to clerical errors, not mistakes about what the law requires.

### III.   <u>MEMORANDUM OF LEGAL AUTHORITY</u>

The Fair Debt Collections Practices Act mandates that debt collectors provide debtors with a written notice informing debtors of their rights under § 1692g, including, among other things, the right to dispute the validity of the debt in question within thirty days of receiving the notice. *See Bartlett v. Heibl*, 128 F.3d 497, 498-99 (7th Cir.1997); *see also Wilson v. Quadramed Corp.,* 225 F.3d 350, 354 (3d Cir.2000) ("[T]he debt validation provisions of section 1692g were included by Congress to guarantee that consumers would receive adequate notice of their rights under the law."); *Johnson v. Equifax Risk Mgmt. Servs.*, No. 00 Civ. 7836, 2004 WL 540459, at *4 (S.D.N.Y. Mar. 17, 2004) ("In short, . . . § 1692g requires the debt collector to inform the consumer of his right to dispute and demand verification of the debt."). Upon the expiration of the thirty-day validation period, the debt collector may presume the validity of the debt. *Id.* at 498.

Debt collectors are required to inform consumers of these rights in writing through what is commonly referred to as a "validation notice." *See Jacobson v. Healthcare Fin. Servs., Inc.*, 516 F.3d 85, 90 (2d Cir.2008) (discussing consumer rights established by the FDCPA). Specifically, a validation notice must inform the consumer of:

(1) the amount of the debt;

(2) the name of the creditor to whom the debt is owed;

(3) a statement that unless the consumer, within thirty days after receipt of the notice, disputes the validity of the debt, or any portion thereof, the debt will be assumed to be valid by the debt collector;

(4) a statement that if the consumer notifies the debt collector in writing within the thirty-day period that the debt, or any portion thereof, is disputed, the debt collector will obtain verification of the debt or a copy of a judgment against the consumer and a copy of such verification of judgment will be mailed to the consumer by the debt collector; and

(5) a statement that, upon the consumer's written request within the thirty-day period, the debt collector will provide the consumer with the name and address of the original creditor, if different from the current creditor.

15 U.S.C. § 1692g(a).

"Even if a debt collector conveys the required information, the collector nonetheless violates the Act if it conveys that information in a confusing or contradictory fashion so as to cloud the required message with uncertainty. Thus, a debt collector violates the Act if its communication is `reasonably susceptible to an inaccurate reading' of the required message." *De-Santis v. Computer Credit Inc.*, 269 F.3d 159, 161 (2d Cir.2001) (*quoting Russell*, 74 F.3d at 35); *see also Savino v. Computer Credit, Inc.*, 164 F.3d 81, 85 (2d Cir.1998) ("A debt collection notice is

overshadowing or contradictory if it fails to convey the validation information clearly and effectively and thereby makes the least sophisticated consumer uncertain as to her rights."). Moreover, in establishing whether language contained in a notice overshadowed or contradicted the mandatory validation notice, "[i]t is unnecessary to prove the contradiction is threatening." *Russell*, 74 F.3d at 35; *see also Desantis v. Roz-Ber, Inc.,* 51 F.Supp.2d 244, 249 (E.D.N.Y.1999).

"The FDCPA establishes a strict liability standard; a consumer need not show intentional violation of the Act by a debt collector to be entitled to damages." *Castro v. ARS Nat'l Servs., Inc.*, No. 99 Civ. 4596, 2000 WL 264310, at *2 (S.D.N.Y. Mar. 8, 2000) (*citing Russell*, 74 F.3d at 33). A single violation of the Act is sufficient to subject a debt collector to liability under the Act. *Id.* "When determining whether § 1692g has been violated, an objective standard, measured by how the `least sophisticated consumer' would interpret the notice received from the debt collector, is applied." *Russell* 74 F.3d at 34 (additional citations omitted). That is, "the test is how the least sophisticated consumer—one not having the astuteness of a `Philadelphia lawyer' or even the sophistication of the average, everyday, common consumer—understands the notice he or she receives." *Russell,* 74 F.3d at 34.

"Courts in the Eleventh Circuit use the `least sophisticated consumer' standard when analyzing overshadowing claims. As a general matter, language is overshadowing if it would make the least sophisticated consumer uncertain as to his or her rights." *Shimek v. Weissman, Nowack, Curry & Wilco, P.C.*, 323 F. Supp. 2d 1344, 1349 (N.D. Ga. 2003) aff'd, 374 F.3d 1011 (11th Cir. 2004) (*citing Jeter v.*

*Credit Bureau, Inc.*, 760 F.2d 1168, 1175-76 (11th Cir.1985). "[T]he determination of whether language overshadows the validation notice is a question of law." *Shimek*, 323 F. Supp. 2d at 1349. By way of comparison to the Eleventh Circuit's "least sophisticated consumer" standard, other circuits have adopted the "unsophisticated consumer" standard – something that would be less onerous on collection agencies and which makes cases in those circuits less applicable to the instant case. *See Gammon v. GC Services Limited Partnership,* 27 F.3d 1254, 1257 (7th Cir.1994). By adopting the "least sophisticated consumer" standard, the 11th Circuit has decided to protect all consumers, the gullible as we as the shrewd. *Clomon v. Jackson,* 988 F.2d 1314, 1318 (2d Cir.1993) ("The basic purpose of the least-sophisticated-consumer standard is to ensure that the FDCPA protects all consumers, the gullible as well as the shrewd.").

## IV.   THE FRONT OF THE LETTER AND PORTIONS OF ITS BACK OVERSHADOW THE VALIDATION NOTICE

Even if a defendant provides the requisite validation notice under 1692g, it may still be liable under § 1692 if its communication "overshadows or contradicts" such notice. *Barrientos v. Law Offices of Mark L. Nichter*, 76 F.Supp.2d 510, 513 (S.D.N.Y.1999), *citing Russell v. Equifax A.R.S.,* 74 F.3d 30, 34-35 (2d Cir.1996). A notice is overshadowing or contradictory "if it would make the least sophisticated consumer uncertain as to her rights." *Id.* at 35.

### A.   To the Least Sophisticated Consumer, The Front of the Letter States That Now is the Time to Pay the Necessary Amount Due

Pursuant to 15 U.S.C. Section 1692g, Plaintiff had the right to dispute the validity of the debt by notifying Defendant in writing within 30 days of the dispute

and obtain verification from Defendant of proof of the debt. Communications designed to create a false sense of urgency violate Section 1692. *See Morgan v. Credit Adjustment Board, Inc.*, 999 F.Supp. 803, 808 (E.D.Va. 1998) ("the notice could easily be interpreted by the least sophisticated consumer as creating a false sense of urgency, which also violates the FDCPA"); *Creighton v. Emporia Credit Service, Inc.*, 981 F.Supp. 411, 416 (E.D.Va. 1997) ("the least sophisticated debtor could reasonably interpret the notice as a demand for immediate payment. . . . This contradicts the validation notice's declaration that the consumer or debtor has thirty days to dispute the debt.").

In *Miller v. Payco-General Am. Credits, Inc.*, 943 F.2d 482, 484 (4th Cir.1991), the collection agency sent a letter that, among other things, demanded "immediate full payment" emphasized by the word "now." The court held that the "emphasis on immediate action also stands in contradiction to the FDCPA, which provides consumers a thirty-day period to decide to request validation." *Id.* at 484. Because a consumer who received the form could easily be confused between the commands to respond "immediately," "now," and "today," and the thirty-day response time contemplated by the statute, Payco violated the Act. *Id.*

The letter sent by Defendant could easily confuse a consumer who received it between the commands to respond "now" to pay the "amount due" which already "has been reported" and the thirty-day response time contemplated by the statute. The front of the letter in the instant case states:

- "Now is the time for you to address this seriously past due account. Your payment in full in the amount of **$440.90** is necessary." (bold in original);

- "Amount Due" emphasized in a red box in font double or triple the size of any of the other fonts used in the letter – including the language in much smaller font on the back;

- It states that the alleged debt "has been reported to a credit bureau," and - at the same time - Defendant refers to itself as a "creditors bureau";

- It contains the term "IMPORTANT NOTICE" three times down its right side highlighted by a greenish background, while the back side contains no such labeling and, instead, is in plain small font;

- Although this appears to be Defendant's first contact with Plaintiff, it states that the account has been "outstanding for some time"; and

- It demands payment at least two times (and once on the back): "Please send your check or money order to us in the enclosed envelope made payable to Retrieval Masters Creditors Bureau" and "**Detach and return this portion with your payment using enclosed envelope**" (bold in original).

A least sophisticated consumer reading the front side of the letter would see that the specified "Amount Due" is "necessarily" due "now".  It also states that the account has been "outstanding for some time," implying that the time has passed for disputing it and instead "Now" is the time to pay it. It states in this "IMPORTANT NOTICE" that the debt has already been provided to a "credit bureau" and the Defendant refers to itself as one such bureau.

Defendant's letter conveys urgency by its statements that the "Amount Due" is "necessarily" due "now" and that the account has been "outstanding for some time." Three directions are given to pay (two on the front and one on the back):

"Please send your check or money order to us in the enclosed envelope made payable to Retrieval Masters Creditors Bureau," "**Detach and return this portion with your payment using enclosed envelope** (bold in original), and "Return the Bottom with your check, credit card information or money order."

Those commands along with the rest of the letter could easily confuse the least sophisticated consumer from believing that payment is due now instead of understanding their right to dispute and validate the debt. *See also Veillard v. Mednick*, 24 F.Supp.2d 863, 869 (N.D.Ill.1998) (finding language stating creditor "shows this obligation to be due immediately" was the same as stating "make payment immediately" and therefore created confusion as to what would happen if debtor disputed validity of the debt). These urges to pay the alleged debt now overshadow Plaintiff's rights provided by 15 U.S.C. Section 1692g.

### B. To the Least Sophisticated Consumer, The Back of the Letter Also Overshadows the Validation Notice

The overshadowing of Plaintiff's rights to dispute the debt is even more compelling when the back side of the letter is read by the least sophisticated consumer. As explained below, the language and format used by Defendant on the back of the letter also could reasonably mislead a least sophisticated consumer to ignore its rights to dispute the debt. *See also Clomon v. Jackson*, 988 F.2d 1314, 1319 (2d Cir.1993) (format of letter can contribute to violation); *Papetti v. Rawlings Financial Services*, 121 F. Supp. 3d 340 (S.D.N.Y. 2015) (noting that the size of font is important); *Miller v. Payco-General Am. Credits, Inc.*, 943 F.2d 482, 483 (4th Cir.1991) (finding violation where letter included large, red, boldface, capitalized

language demanding immediate payment multiple times and included the requisite

validation notice on the back of the page, in small gray font).

> a.   "SEE REVERSE SIDE FOR IMPORTANT
> INFORMATION" Refers to Directions to Pay

Despite ample room on the front, Defendant intentionally regulated the

validation notice to the back side of the letter.[3]  However, the back side of the letter

not only inconspicuously lists the validation notice at the very top, it more

prominently displays the following information centered and towards the bottom

and in the same font as the validation notice:

> ^ Detach along this edge. ^
> Return the bottom of portion with your check, credit card information or
> money order.
> Include your account number, name and address on all correspondence.
>
> Thank you for your attention to this matter.

Notably, these payment information lines up exactly with the front side of the

letter's instruction to "SEE REVERSE SIDE FOR IMPORTANT INFORMATION" -

both of those notices are on the same position on each sides of the letter.  To the

unsophisticated consumer, or even to the most sophisticated consumer, the

"IMPORTANT INFORMATION" referenced on the front side of the letter is a

---

[3] In addition to the "content" requirements, almost all courts addressing this issue also require that the "form" of the notice not be "inconspicuous." *Riveria v. MAB Collections, Inc.*, 682 F.Supp. 174 (W.D.N.Y.1988)("For a notice to be sufficient it must be placed in such a way that a reasonable consumer would be aware of its message."); *Ost v. Collection Bur., Inc.*, 493 F. Supp. 701, 703 (D.N.D.1980) (no reference to notice on face of form when combined with small, onerous to read, print size "point[ed] to a deliberate policy on the part of the collector to evade the spirit of the notice statute, and mislead the debtor into disregarding the notice").

reference to the language about how the letter's recipient should make a payment. In fact, lining up the font of the letter's instruction to "SEE REVERSE SIDE FOR IMPORTANT INFORMATION" with the back shows that language actually refers to the information about how to pay.

<strong>b.    <u>"SEE THE REVERSE SIDE OF THIS LETTER FOR IMPORTANT INFORMATION ABOUT YOUR RIGHTS" is Insufficient to Comply with the Act</u></strong>

As explained above, the letters reference to "SEE REVERSE SIDE FOR IMPORTANT INFORMATION" clearly refers to the payment instructions on the back – even to the most sophisticated reader.  Thus, the Defendant's entire case essentially rests on its reference on the front of the letter to ""SEE REVERSE SIDE FOR IMPORTANT INFORMATION ABOUT YOUR RIGHTS."  This reference is insufficient to comply with the Act.

In *Rabideau v. Management Adjustment Bureau*, 805 F.Supp. 1086, 1093 (W.D.N.Y.1992), the court held insufficient a reference to the back side of a letter when the back contained both a validation notice and directions on how to make a credit card payment.  Thus, the court held in *Rabideau* that the suggestion, "SEE REVERSE SIDE FOR IMPORTANT INFORMATION" was inadequate because it did not effectively convey to the least sophisticated consumer that important congressionally created rights applicable to his or her situation appear on the reverse side of the letter.  *Id.*  The court held:

> In this circumstance, the suggestion, "See Reverse Side for Important Information," which Defendant argues refers to the validation notice is, at best, ambiguous and, at worst, misleading. In either case, it is inadequate because it is neither prominent nor

does it effectively convey to the least sophisticated consumer that important congressionally created rights applicable to his or her situation appear on the reverse side of the letter.

*Id.* at 1094. Thus, simply stating "SEE REVERSE SIDE FOR IMPORTANT INFORMATION" was insufficient to comply with the Act. *Id.*

Likewise, the least sophisticated consumer could easily consider "SEE REVERSE SIDE FOR IMPORTANT INFORMATION" as a duplicate notice to "SEE THE REVERSE SIDE OF THIS LETTER FOR IMPORTANT INFORMATION ABOUT YOUR RIGHTS". The letter is unclear as to whether these notices are duplicates, in which case they could both be referring to the payment information on the back. The reference to "IMPORTANT INFORMATION ABOUT YOUR RIGHTS" could easily be interpreted to relate to Plaintiff's rights to pay the alleged debt by returning the bottom of portion with your check, credit card information or money order and including the account number, name and address on all correspondence. The reference to the back of the letter could either be to the validation notice or the instructions to pay. Thus, it did not comply with the Act.

Moreover, the reference on the front of the letter to "SEE THE REVERSE SIDE OF THIS LETTER FOR IMPORTANT INFORMATION ABOUT YOUR RIGHTS" conflicts with the language Defendant added at the top of the letter's reverse side. By adding this sulfurous language that "This is not intended to be a complete statement of all rights consumers may have under state and federal law" to the top of the reverse side, it is unclear as to what "RIGHTS" the front of the letter is referencing and whether or not the validation notice itself is such a

"RIGHT."  In fact, this language that "[t]his is not intended to be a complete statement of all rights" literally means that the validation notice below it is incomplete and not actually an accurate statement of rights.

      c.    <u>The Validation Notice is not Effectively Conveyed to the Least Sophisticated Consumer and is Overshowed by the Remainder of the Letter</u>

Merely including the required validation notice alone does not satisfy the statute; rather the validating notice must be effectively conveyed to the debtor. *See Swanson v. S. Oregon Credit Serv., Inc.*, 869 F.2d 1222, 1225 (9th Cir.1988). The extra language Defendant added at the top of the back side of the letter refers to the rights of "consumers" – technical language that the least sophisticated consumer would not recognize.  *See* 15 USC 1692a Section 803(a)(3) ("The term 'consumer' means any natural person obligated or allegedly obligated to pay any debt"). By way of comparison, the front of the letter names Plaintiff by her actual name and makes numerous references to Plaintiff by stating "you" or "your".  Notably, the bottom part of the back (directing the recipient on how to return the payment) also refers to Plaintiff as both "you" and "your" ("Return the bottom portion with your check…" and "Include your account number). Failing to properly inform Plaintiff that the validation notice is directed to her is also a violation of the Act.  *See Riveria v. MAB Collections, Inc.*, 682 F.Supp. 174, 177 (W.D.N.Y.1988) (Larimer, J.) (failure to provide appropriate language on the reverse side of a notice, calculated to alert the reader that the information, i.e., a validation notice, was directed to her or him, is evidence of an intentional violation of the statute).

Additionally, the validation notice states that unless you "notify this office within 30 days after receiving this notice that you dispute the validity of this debt…." but it is unclear as to what "this office" is.  Nowhere in the rest of the letter does it refer to an office, and the front of the letter contains two addresses for Defendant (one a P.O. Box at the bottom and physical address with a suite number at the top). The return envelope and accompanying tear off bottom portion of the letter are directed to a P.O. Box address – not an office. "This office" might also mean the original alleged creditor, identified on the front as: "You Owe:  Swiss Colony." *See also* paragraph 1 of the front of the letter ("We have been authorized to contact you regarding your past due account with our client, Swiss Colony, in the amount of **$440.90**"). *See Savino v. Computer Credit, Inc.*, 164 F.3d 81, 85 (2d Cir. 1998) (There is a violation of the FDCPA if the letter's communication is "reasonably susceptible to an inaccurate reading" of the required message.)

The validation notice is unclear about where any disputes should be mailed; at a minimum, it is subject to three different interpretations about whether it should be sent to the suite identified at the top of the front of the letter, a P.O. Box, or to Swiss Colony's office (the entity that the letter's recipient would likely have been familiar with as the original creditor).  By way of comparison, the directions about how to pay the claimed Amount Due are made clear at least 3 times and include a return envelope so that no mistakes to payment can be made. By providing uncertainty or confusion as to how to dispute the debt, Defendant also violated the Act. *See Chauncey v. JDR Recovery Corp.,* 118 F.3d 516, 519 (7th Cir.

1997) (holding that there was contradiction in a letter regarding when the dispute should be mailed back to the collection agency).

### C.  Defendant's Affirmative Defenses

Plaintiff does not seek actual damages – only statutory damages and declaratory judgment, so the first two affirmative defenses are inapplicable. As to the third defense, a debt collector will not violate the FDCPA if it can demonstrate "by a preponderance of evidence" that "the violation was not intentional and resulted from a bona fide error notwithstanding the maintenance of procedures reasonably adapted to avoid any such error." 15 U.S.C. § 1692k(c). To qualify for the FDCPA's bona fide error defense, the debt collector must show that "(1) the violation was unintentional; (2) the violation was a result of a bona fide error; and (3) the debt collector maintained procedures reasonably adapted to avoid any such error." *Hartman v. Great Seneca Fin. Corp.*, 569 F.3d 606, 614 (6th Cir. 2009) (*citing Jerman v. Carlisle, McNellie, Rini, Kramer & Ulrich LPA*, 538 F.3d 469, 476-77 (6th Cir. 2008), rev'd on other grounds, 559 U.S. 573 (2010)). However, this defense is inapplicable to this case because there is no clerical error at issue.

a.  <u>The Bona Fide Error Defense Only Applies to Clerical Errors Such as Typographical Errors and Miscalculations of Amounts Owed</u>

The bona fide error defense does not apply to mistaken interpretations of the legal requirements of the FDCPA. *Jerman v. Carlisle, McNellie, Rini, Kramer & Ulrich, L.P.A.*, 559 U.S. 573, 604-05 (2010).  The Supreme Court in *Jerman* addressed the previously unsettled question of whether, for the purposes of the bona

fide error defense, a debt collector's violation is intentional if the debt collector performs an intentional act, with no intent to violate the FDCP. *See Johnson v. Riddle*, 443 F.3d 723, 728 (10th Cir. 2006) (questioning "whether it is the general intent to collect a debt or whether it is the specific intent to violate the FDCPA" that violates the "not intentional" element of the bona fide error defense). The Court summarized the dispute as "whether a `violation' resulting from a debt collector's misinterpretation of the legal requirements of the FDCPA can ever be `not intentional.'" *Jerman*, 130 S.Ct. at 1611. The Court held that the bona fide error defense does not cover a mistake of law. It reasoned that "[o]ur law is . . . no stranger to the possibility that an act may be `intentional' for the purposes of civil liability, even if the actor lacked actual knowledge that her conduct violated the law." *Id.* at 1612

"Following *Jerman*, the intentional prong of the bona fide error defense can no longer be whether a defendant specifically intended its actions to violate the FDCPA." *Allen v. Checkredi of Kentucky, LLC*, Civil Action No. 09-103-DLB (D.C. E.D. Kentucky, November 17, 2010). As the petitioner successfully argued in its Supreme Court brief, a violation that is not intentional could mean two things: "It could mean that the defendant did not intend to commit the act that violated the statute" or it "could refer to a defendant who knows exactly what she is doing but does not realize that her intentional act will violate the statute." *Brief for Petitioner* at 14, *Jerman v. Carlisle, McNellie, Rini, Kramer & Ulrich LPA*, 130 S.Ct. 1605

(2010) (No. 08-1200), 2009 WL 3043969 at *14.  By definition, only the latter standard could cover a mistake of law.  *Id.*

Here, Defendant admits it sent to Plaintiff the letter attached as Exhibit 1 to its Answer – there is no clerical at issue in this case.  *See Bassett v. I.C. Sys., Inc.* 715 F.Supp.2d 803, 813 (N.D. Ill 2010) (interpreting *Jerman* to mean that "a debt collector's conduct may be intentional even if he lacked the actual knowledge that his conduct violated the FDCPA" and consequently, "the bona fide error defense under Section 1692k(c) only applies to procedural or clerical errors"); *McNall v. Credit Bureau of Josephine Cnty., Inc.*, No. 07-3075, 2010 WL 3306899, at *3 (D. Or. Aug. 19, 2010) (finding the bona fide error defense unavailable because the defendant "made a conscious decision not to report Plaintiff's debt as disputed" and this failure was not an unintended factual or clerical mistake).  Defendant's affirmative defense also does not claim a clerical error:

### Third Affirmative Defense

RMCB affirmatively states that any violation of law, which it denies occurred, was not intentional and would have resulted from a bona fide error notwithstanding the maintenance of procedures reasonably adapted to avoid such error. These procedures include, but are not limited to, policies and procedures in place regarding reviewing and implementation of compliance with lawful options to provide to account holders regarding information on account balances and disclosures required by law. This includes the retention of individuals, including legal counsel, with knowledge of federal law to review status of federal law and ensure compliance with same. It, furthermore, includes constant review, re-review and analysis of the FDCPA text itself and of authorities interpreting and analyzing the FDCPA, including case law, industry guidance, and adjustment of its collection practices as suggested by these authorities. In addition, RMCB is a member of the Association of Credit and Collection Professionals, which is the leading trade association in the United States for collection agencies on debt collection compliance.

This defense, which essentially claims that Defendant investigated the law but was mistaken as to its application, is no longer permitted as a valid defense per *Jerman* because the bona fide error defense does not cover a mistake of law.  The status of the law in this regard was recently addressed by this Court in *Palmer v. Dynamic Recovery Solutions, LLC*, Case No. 6:15-cv-59-Orl-40KRS (M.D. Fla., May 4th 2016):

> the U.S. Supreme Court has limited the defense solely to clerical and factual mistakes made in the collection of debts. <u>Such mistakes include typographical errors, miscalculations of amounts owed, and other inadvertent missteps in the debt collection process</u>. Because Defendants' alleged violation in this case revolves around their misinterpretation of the law—that is, Defendants' mistaken belief that the failure to disclose to a consumer that they cannot legally enforce a debt does not misrepresent the character or legal status of that debt—the violation would not be covered by the bona fide error defense.

(emphasis supplied, citations and parentheticals omitted).  Plaintiff is not making a claim of a clerical or factual error regarding the amount owed.  Her claims are based on the Defendant's formatting and structure present in the letter attached as Exhibit 1 to Defendant's Answer. Thus, the third affirmative defense is as inapplicable to this case as the first two defenses.

    b.  <u>There are no Other Issues Precluding a Decision on Whether the Letter Overshadows the Validation Notice</u>

The validity of the underlying debt is immaterial. *McCartney v. First City Bank*, 970 F.2d 45 (5th Cir. 1992).  The focus is on the debt collector's conduct, not the consumer's. *Keele v. Wexler*, 149 F.3d 589 (7th Cir. 1998). Whether plaintiff even receives an offending communication is irrelevant to liability.  *Morgan v. Credit Adjustment Board, Inc.*, 999 F.Supp. 803, 805-06 (E.D.Va. 1998).  Likewise, whether

Plaintiff read the letter is "of no moment on the issue of whether a violation has occurred." *Kuhn v. Account Control Technology, Inc.*, 865 F.Supp. 1443, 1450 (D.Nev. 1994); *see also, Russell v. Equifax* A.R.S., 74 F.3d 30, 33 (2nd Cir.1996) (holding the FDCPA is a remedial, strict liability statute requiring no proof of deception or actual damages to obtain its statutory remedies); *Savino v. Computer Credit, Inc.*, 960 F.Supp. 599, 605 (E.D.N.Y.1997) (rejecting as "contrary to the applicable law" the debt collector's argument that consumer was barred from receiving damages because he did not receive the letter).

Intent is not an element of liability.  *Patzka v. Viterbo College*, 917 F.Supp. 654 (W.D.Wis. 1996). Neither knowledge nor intent necessary to establish liability. *Pittman v. J.J. Mac Intyre Co.*, 969 F.Supp. 609 (D.Nev. 1997).  Plaintiff therefore need suffer no actual injury whatsoever to recover. *See Russell v. Equifax A.R.S.*, 74 F.3d 30 (2nd Cir. 1996); *Bentley v. Great Lakes Collection Bureau*, 6 F.3d 60 (2nd Cir. 1993); *Pittman v. J.J. Mac Intyre Co.,* 969 F.Supp. 609 (D.Nev. 1997). Declaratory judgment nevertheless is an appropriate remedy. *Gammon v. GC Services*, 162 F.R.D. 313 (N.D.Ill. 1995).

## V.  <u>CONCLUSION AND REQUEST FOR RELIEF</u>

The issue before this Court is not to "decide whether the debtor or the debt collector offers 'a more appropriate reading' of a debt collection letter."  *Caprio v. Healthcare Revenue Recovery Grp., LLC*, 709 F.3d 142, 151 (3d Cir. 2013).  Instead, the document must be interpreted from the perspective of "least sophisticated debtor." *Id.* The Act is designed "to protect naïve and even gullible individuals, the

`least sophisticated debtor' standard is `lower than simply examining whether particular language would deceive or mislead a reasonable debtor.' *Id., citations omitted.* Here, the front of the letter – and even parts of its reverse side – overshadow the validation notices required by 15 U.S. Code § 1692g. Thus, the letter violates § 1692g.

Therefore, Plaintiff respectfully requests that judgement be entered in Plaintiff's favor as to liability and a declaration that the letter attached as Exhibit 1 to Defendant's Answer violates the FDCPA - with the Court reserving jurisdiction for all other issues in this case such as the application of statutory damages, whether any particular employee or supervisor of Defendant should be held personally liable and substituted for the John Does named[4], and class certification issues, attorney's fees, costs and damages remaining for future determination.

November 14, 2017

> /s/ Michael Massey
> Trial Counsel
> Massey@352law.com
> Fla. Bar No. 153680
> Massey & Duffy, P LLC
> 855 E. University Ave.
> Gainesville, FL 32601
> 352-505-8900

---

[4] Both the collection agency/employer and supervisor and offending employee are liable. *West v. Costen*, 558 F.Supp. 564 (W.D.Va. 1983).  Moreover, the Statutory definition includes both.  Commentary Sections 803(6)- 1, Illustration 1, and 813-1; *Newman v. Checkrite California*, 912 F.Supp. 1354 (E.D.Ca. 1995); *Drennan v. Van Ru Credit Corp.*, 950 F.Supp. 858 (N.D.Ill. 1996); *Ditty v. Checkrite, Ltd., Inc.*, 973 F.Supp. 1320 (D.Utah 1997).  Thus, there is joint and several liability. *Teng v. Metropolitan Retail Recovery, Inc.*, 851 F.Supp. 61 (E.D.N.Y. 1994).

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that a true and correct copy of the foreign has been

delivered electronically by filing the same with the Court's electronic filing system

and sending a copy to counsel for the Defendant on this November 14, 2017.

<u>s/ Michael Massey</u>
Michael Massey
Trial Counsel
Massey@352law.com
Fla. Bar No. 153680
Massey & Duffy, P LLC
855 E. University Ave.
Gainesville, FL 32601
352-505-8900