## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## OCALA DIVISION

Case No.: 5:17-cv-426-Oc-40PRL

CHERYL RAFFERTY, on behalf of herself and all
others similarly situated,
     Plaintiff,

vs.

RETRIEVAL-MASTERS CREDITORS BUREAU,
INC., d/b/a RMCB Collection Agency, a foreign
corporation, and John Does 1 through 25,
     Defendants.
_____/

### PLAINTIFF'S MOTION FOR CLASS CERTIFICATION WITH INCORPORATED MEMORANDUM OF LAW

Plaintiff, CHERYL RAFFERTY, by and through the undersigned counsel, files this

Motion for Class Certification, and in support thereof states:

### FACTUAL BACKGROUND

1. The Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 *et seq.*, which

   prohibits certain debt collection practices, provides for the initiation of court proceedings to

   enjoin violations of the FDCPA and to secure such equitable relief as may be appropriate in

   each case.

2. Plaintiff is a natural person and a resident of the State of Florida, and is a "Consumer" as

   defined by 15 U.S.C. § 1692a(3).  All of her debts that are relevant to this cause of action are

   consumer debts for personal purposes.

3. Defendant, RETRIEVIAL-MASTERS CREDITORS BUREAU, INC. ("RMCB"), is a

   foreign limited liability company headquartered in the State of New York.

4.  RMCB is primarily in the business of acquiring and/or collecting third-party debts that are allegedly due to another.

5.  RMCB has attempted to collect a consumer debt allegedly owed by Plaintiff to Swiss Colony, a provider of packaged food gifts.

6.  RMCB regularly used the United States Postage Service in its attempts to collect debts owed to RMCB's clients.

7.  RMCB is a "Debt Collector" as that term is defined by 15 U.S.C. §1692a(6).

8.  The instant action centers around debt collection letters that are mailed to alleged debtors by RMCB on behalf of RMCB's clients.  On or after June 7, 2017, Plaintiff received a letter from RMCB, a true and correct copy of which was attached to the Complaint (Doc. 1) and to RMCB's Answer (Doc. 13), and which is attached hereto as **Exhibit A** (the "Collection Letter").

9.  On or about January 12, 2018, during initial discovery, Plaintiff requested, by her interrogatory number 4, that RMCB provide "the names, addresses, telephone numbers, dates of birth and employer of each person who drafted and/or created the [Collection Letter] and explain that person's role in the drafting/creation."

10. On or about February 22, 2018, RMCB provided its initial answer to that interrogatory, which stated, in its entirety: "RMCB has no responsive information to this interrogatory.  The subject letter has been in existence for over fifteen years and RMCB has no record of who drafted and/or created the letter." A true and correct copy of that portion of RMCB's answer to Plaintiff's interrogatory is attached hereto as **Exhibit B**.

11. On or about March 7, 2018, RMCB provided a supplemental answer to interrogatory number 4, which stated, in its entirety:

RMCB has no responsive information to this interrogatory.  The subject letter has been in existence and use for over fifteen years and RMCB has no record of who initially drafted, approved and/or created the letter.  The subject letter has not since been redrafted, reapproved and/or recreated.  When RMCB receives electronic data from the creditor, Swiss Colony, regarding unpaid, outstanding account balances, RMCB's IT team uploads that data into RMCB's systems, which triggers collection correspondence to be populated regarding the individual who owes the account balance to Swiss Colony, and then mailed.  There is no "drafting" or "approval" process involved with that, and, as mentioned above, the form of the subject letter was created over 15 years ago.  Therefore, only the IT team has direct involvement with the inputting of a debtor's specific data into the letter.  This team only performs IT functions, and are not debt collectors (i.e. they are located in Defendant's server room, and do not perform any debt collection activities).

The above response was provided and verified by the Chief Financial Officer of RMCB.  A true and correct copy of that portion of RMCB's supplemental answer to Plaintiff's interrogatory is attached hereto as **Exhibit C**.

12. RMCB's website claims that RMCB "prints and mails millions of pieces of correspondence on behalf of [its] clients each year." A true and correct copy of the "Process" page of RMCB's website, accessed on April 2, 2018, is attached hereto as **Exhibit D** with the above-quoted portion highlighted.

13. On or about January 12, 2018, Plaintiff submitted a request for the production of documents. Request number 5 asked for Defendant to produce the following documents: "Any and all similar (sic) to the [Collection Letter] sent by Defendant on or between the following dates: 9/22/2016 to 9/21/2017 to recipients within the State of Florida."

14. RMCB's response included the statement that "hundreds of thousands" of such letters were mailed, notwithstanding numerous other stated objections.  A true and correct copy of that portion of RMCB's response to Plaintiff's request for production is attached hereto as **Exhibit E** with the above-quoted portion highlighted.

**PROPOSED CLASS**

15. The proposed class consists of all Florida consumers who received RMCB's form Collection

Letter that contained at least one of RMCB's alleged violations of the FDCPA.  The class

period begins one year prior to the filing of the instant action.

**LEGAL STANDARD**

16. The FDCPA, 15 U.S.C. § 162k(a) provides:

(a) . . . any debt collector who fails to comply with any provision of this subchapter with
respect to any person is liable to such person in an amount equal to the sum of --

(1) any actual damage sustained by such person as a result of such failure;

(2)(A) in the case of any action by an individual, such additional damages as the
court may allow, but not exceeding $1,000; or

(B) in the case of a class action, (i) such amount for each named plaintiff as could
be recovered under subparagraph (A), and (ii) such amount as the court may allow
for all other class members, without regard to a minimum individual recovery, not
to exceed the lesser of $500,000 or 1 per centum of the net worth of the debt
collector; and

(3) in the case of any successful action to enforce the foregoing liability, the costs
of the action, together with a reasonable attorney's fee as determined by the court.

In other words, the FDCPA provides for the sum of actual damages, statutory damages, costs,

and reasonable attorney's fees.

17. The Federal Rules of Civil Procedure, Rule 23, provides, in relevant part:

(a) PREREQUISITES. One or more members of a class may sue or be sued as
representative parties on behalf of all members only if:

(1) the class is so numerous that joinder of all members is impracticable;

(2) there are questions of law or fact common to the class;

(3) the claims or defenses of the representative parties are typical of the claims
or defenses of the class; and

(4) the representative parties will fairly and adequately protect the interests of
the class.

(b) TYPES OF CLASS ACTIONS. A class action may be maintained if Rule 23(a) is satisfied and if:

(1) prosecuting separate actions by or against individual class members would create a risk of:

(A) inconsistent or varying adjudications with respect to individual class members that would establish incompatible standards of conduct for the party opposing the class; or

(B) adjudications with respect to individual class members that, as a practical matter, would be dispositive of the interests of the other members not parties to the individual adjudications or would substantially impair or impede their ability to protect their interests;

(2) the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole; or

(3) the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy. The matters pertinent to these findings include:

(A) the class members' interests in individually controlling the prosecution or defense of separate actions;

(B) the extent and nature of any litigation concerning the controversy already begun by or against class members;

(C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and

(D) the likely difficulties in managing a class action.

18. In other words, "Rule 23(a) states four threshold requirements applicable to all class actions:

(1) numerosity (a 'class [so large] that joinder of all members is impracticable'); (2) commonality ('questions of law or fact common to the class'); (3) typicality (named parties' claims or defenses 'are typical . . . of the class'); and (4) adequacy of representation (representatives 'will fairly and adequately protect the interests of the class')." Amchem Products, Inc. v. Windsor, 521 U.S. 591, 613 (1997).

19. In addition to the requirements of Rule 23, the proposed class must satisfy at least one of the three requirements in Rule 23(b). Wal-Mart Stores, Inc. v. Dukes, 131 S. Ct. 2541, 2548 (2011).

### Numerosity

20. A plaintiff seeking to certify a class must describe the class with sufficient certainty to permit the identification of persons as members of the class. See Pottinger v. City of Miami, 720 F. Supp. 955, 957 (S.D. Fla. 1989).

21. Courts have noted that the "numerosity" requirement is more accurately described as an "impracticability of joinder" requirement. See Hastings-Murtagh v. Texas Air Corp., 119 F.R.D. 450, 459 (S.D. Fla. 1988); Pruitt v. Allied Chem. Corp., 85 F.R.D. 100, 105 (E.D. Va. 1980).

22. Impracticability does not mean that joinder must be impossible, but only means that the Court must find that the difficulty or inconvenience of joining all class members makes class litigation desirable. In re Alexander Grant & Co. Litigation, 110 F.R.D. 528, 533-534 (S.D. Fla. 1988); 7A Wright, Miller & Kane, *Federal Practice & Procedure* § 1762 (1986).

23. In making this finding, the Court may consider relevant factors other than just the number of class members. For example, the Court should consider "the geographical dispersion of the class, the ease with which class members may be identified, the nature of the action, and the size of each plaintiffs claim." Zeidman v. J. Ray McDermott & Co., Inc., 651 F.2d 1030, 1038 (5th Cir. 1981); Kilgo v. Bowman Transp. Inc., 789 F.2d 859, 878 (11th Cir. 1986); Lawson v. Wainwright, 108 F.R.D. 450, 454 (S.D. Fla. 1986).

## **Commonality**

24. No qualitative or quantitative test will determine commonality, and the legal claims need not be completely identical—in fact, it is only necessary to find at least one issue common to all class members.  Pottinger, 720 F. Supp. at 958.

25. Moreover, "[t]he threshold of 'commonality' is not high.  Aimed in part at determining whether there is a need for combined treatment and a benefit to be derived there from, the Rule requires only that resolution of the common questions affect all or a substantial number of the class members." Jenkins v. Raymark Indus., Inc., 782 F.2d 468, 473 (5th Cir. 1986).

## **Typicality**

26. Linked closely with the Rule 23(a)(2) requirement of commonality is the prerequisite that a class action may be maintained only if "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed. R. Civ. P. Rule 23(a)(3).

27. The Eleventh Circuit has explained that typicality requires the existence of:

> A nexus between the class representative's claims or defenses and the common questions of law or fact that unite the class.  A sufficient nexus is established if the claims or defenses of the class and the class representative arise from the same event or pattern or practice and are based on the same legal theory.  Typicality, however, does not require identical claims or defenses.  A factual variation will not render a class representative's claim atypical unless the factual position of the representative markedly differs from that of other members of the class.

Kornberg v. Carnival Cruises Lines, Inc., 741 F.2d 1332, 1337 (11th Cir. 1984), cert. denied, 471 U.S. 1004 (1985).

28. The primary concern is whether the "named representatives" claims have the same essential characteristics as the claims of the class at large." Appleyard v. Wallace, 754 F.2d 955, 958 (11th Cir. 1985), disagreed with on other grounds, Green v. Mansour, 474 U.S. 64, 67, 106 S. Ct. 423, 425 (1985) (quoting De La Fuente v. Stokely-Van Camp, Inc., 713 F.2d 225, (7th Cir. 1983)); see also Lawson, 108 F.R.D. at 456; Pottinger, 720 F. Supp. at 959.

29. "Typicality" refers to the nature of the claims of the representatives, not the individual characteristics of each class representatives' individual transactions with the defendant, which are irrelevant to the typicality criterion.  See Pottinger, 720 F. Supp. at 959; Brown v. Cameron-Brown Co., 92 F.R.D. 32, 38 (E.D. Va. 1981); *Newberg on Class Actions* §§ 22.11-22.18 (2d ed. 1985).

30. Even if each class member has not been affected in exactly the same way by a defendant's conduct, such factual differences will not render the representative's claims atypical. Appleyard, 754 F.2d at 958.  Moreover, differences in each class member's claim for damages do not preclude class certification.  Kornberg, 741 F.2d at 1337; In re Alexander Grant & Co. Litigation, 110 F.R.D. at 535.

## Rule 23(a)(4): Adequacy of Representation

31. Rule 23(a)(4) requires that the representative parties will fairly and adequately protect class interests. This requirement is met "if the named representatives have interests in common with proposed class members and the representatives and their qualified attorneys will properly prosecute the class action." Pottinger, 720 F. Supp. at 959 (citing Gonzales v. Cassidy, 474 F.2d 67, 72 (5th Cir. 1973)).

## Whether Class Certification is Appropriate

32. Rule 23(b)(2) class certification is warranted when a defendant has adopted a standardized business practice that is generally applicable to the class as a whole. Leszcynski, 176 F.R.D. at 673.

33. "'Generally applicable' as used in Rule 23(b)(2) has been interpreted to mean that the party opposing the class 'has acted in a consistent manner towards members of the class so that his actions may be viewed as part of a pattern of activity, or to establish a regulatory scheme, to

all members.'" Id. (Citing 7A C. Wright & A. Miller, *Federal Practice and Procedure*,

section 1775 at 449).

34. In deciding whether common questions of law or fact predominate under Rule 23(b)(3),

courts focus on the issue of liability.  Dura-Bilt Corp. v. Chase Manhattan Corp., 89 F.R.D.

87, 93 (S.D.N.Y. 1981).  Factual variances will not defeat class certification.  Armstead v.

Pingree, 629 F. Supp. 273, 280 (M.D. Fla. 1986); Indianer v. Franklin Life Ins. Co., 113

F.R.D. 595 (S.D. Fla. 1986), overruled in part on other grounds by Ericsson GE Mobile

Communications, Inc. v. Motorola Communications & Elecs., Inc., 120 F.3d 216, 220 (11th

Cir. 1997); Schmidt v. Interstate Fed. Sav. & L. Ass'n., 74 F.R.D. 423, 427 (D.D.C. 1977).

## Whether a Class Action is Superior to Other Methods of Adjudication

35. A class action is the only feasible method where those who have been injured "are in a poor

position to seek legal redress, either because they do not know enough or because such

redress is disproportionately expensive." Dolgow v. Anderson, 43 F.R.D. 472, 484-85

(E.D.N.Y. 1968), distinguished on other grounds by Eisen v. Carlisle & Jacquelin, 417 U.S.

156, 178 (1974) (quoting Kalven and Rosenfield, *The Contemporary Function of the Class

Suit*, 8 U. Chi. L. Rev. 684, 686 (1941)).

36. A class action is superior if it offers a practical method for obtaining a fair and efficient

disposition of the claims of the class, where relief might otherwise not be economically

feasible. Deposit Guaranty National Bank v. Roper, 445 U.S. 326, 339, 100 S. Ct. 1166, 1174

(1980).

## DISCUSSION

### Numerosity

37. The proposed class is readily identifiable and ascertainable, as it consists of anyone who received RMCB's form Collection Letter containing an alleged violation of the FDCPA during the specified time period.

38. Based upon RMCB's answers to Plaintiff's interrogatories as well as its advertising materials, this class of potential claimants numbers in the hundreds or thousands (even "millions," in RMCB's own words). See **Exhibits A**, **B**, **C**, **D**, and **E**, attached hereto.

39. The class is reasonably believed to be geographically distributed across the State of Florida and not concentrated in any particular locality.

40. These facts and reasonably drawn conclusions establish that the proposed class is inescapably so numerous as to make individual joinder of class members and the individual claims based on RMCB acts and omissions impracticable.  See, e.g., Cox v. American Cast Iron Pipe Company, 784 F.2d. 1546, 1553 (11th Cir. 1988) (generally less than 21 members is inadequate while more than forty is adequate); Jack v. American Linen Supply Co., 498 F.2d 122, 124 (5th Cir. 1974) (51 class members found to satisfy numerosity requirement); Brady v. Thurston Motor Lines, 726 F.2d 136, 145 (4th Cir. 1984), cert. denied, 469 U.S. 827 (1985) (class of 74 persons met the numerosity requirement); Sagers v. Yellow Freight Systems, Inc., 529 F.2d 721, 734 (5th Cir. 1976) (110 members clearly was a sufficient number to meet the numerosity requirement); Powers v. Stuart-James Co., Inc., 707 F. Supp. 499, 501-02 (M.D. Fla. 1989) (estimate of 500 investor class members certified as class).

41. Prosecuting separate actions by or against individual class members would create a risk of inconsistent or varying adjudications with respect to individual class members that would

establish incompatible standards of conduct for the party opposing the class. Fed. R. Civ. P. 23(b)(1)(A).

42. Furthermore, prosecuting separate actions by or against individual class members would create a risk of adjudications with respect to individual class members that, as a practical matter, would be dispositive of the interests of the other members not parties to the individual adjudications or would substantially impair or impede their ability to protect their interests. Fed. R. Civ. P. 23(b)(1)(B).

### Commonality

43. The commonality requirement is easily met because RMCB's Collection Letter, based upon its responses to Plaintiff's discovery requests relating to its business practices, has not been modified and has been in use for the past 15 years.  The only parts of the letter that change are the date, the name and address of the recipient, and the description and amount of the debt, while the language that is the subject of this litigation is apparently common to all such letters.  See **Exhibits B**, **C**, and **E**, attached hereto.

44. The questions of law or fact common to class members predominate over any questions affecting only individual members, and a class action is superior to other available methods for fairly and efficiently adjudicating this controversy. Fed. R. Civ. P. 23(b)(3).  These common questions of law and fact include, without limitation:

   a. Whether RMCB violated Sections 1692g *et seq.* of the FDCPA in its regular business practice of consumer debt collection.

   b. Whether RMCB's Collection Letter violated the FDCPA by including language on the front page of the Collection Letter that overshadowed the validation notice contained on the reverse side under the least-sophisticated consumer standard;

   c. Whether Plaintiff and the class have been injured by the RMCB's conduct;

    d.   Whether Plaintiff and the class have sustained damages and are entitled to restitution as a result of Defendants' wrongdoing and if so, what is the proper measure and appropriate statutory formula to be applied in determining such damages and restitution;

    e.   Whether Plaintiff and the class are entitled to statutory damages; and

    f.   Whether Plaintiff and the class are entitled to declaratory and/or injunctive relief.

## Typicality

45. Questions of fact in this case are based on the same legal theories as Plaintiff's claims and are typical of the class, which all arise from the same operative facts.

46. Here, Plaintiff's claim is not factually distinguishable from the claims of the class members. Each class member received the same form Collection Letter, and each class member's claim arises from the same course of conduct engaged in by RMCB. Each claim is also based on the same legal theories.

47. Plaintiff's claim is not only typical but identical to all class members in that they all seek the same remedy: actual damages, if applicable, plus statutory damages for violations of the FDCPA.

48. Finally, the typicality of claims requirement of Rule 23(a)(3) and the adequacy of representation requirement of Rule 23(a)(4) (discussed below) are related. Both are intended to prevent the representative from having interests that conflict with those of the class members that Plaintiff purports to represent. Mersay v. First Republic Corp. of America, 43 F.R.D. 465, 468 (S.D.N.Y. 1968). As discussed below, no such conflicts are present between Plaintiff's interests and those of the class. Thus, the requirements of Rule 23(a)(3) are satisfied, and class certification should be granted.

**Adequacy of Representation**

49. Plaintiff has no interest adverse or antagonistic to the interest of the other members of the class because there is no statutory set off between actual and statutory damages for Plaintiff and the class members under the terms of the FDCPA because of the statute allows a successful claimant to recover "the sum of" actual damages, statutory damages, costs, and reasonable attorney's fees. 15 U.S.C. § 1692k(a).

50. Each class member has the same interest in compelling RMCB to strictly abide by the provisions of the FDCPA.

51. Plaintiff will fairly and adequately protect the interest of the class and has retained experienced and competent attorneys with experience in complex litigation to represent the class.

**Class Certification is Appropriate**

52. In addition to satisfying the four prerequisites to class representation discussed above, the class action complaint must also satisfy at least one requirement under subsection (b) of Rule 23.

53. Plaintiff asserts that this case and the proposed class should be certified under subsection (b)(2) for the relief requested in the Complaint as RMCB has acted, and continues to act, on grounds that are generally applicable to the class, thereby making appropriate final judgment and/or declaratory relief with respect to the class as a whole.

54. As has been discussed throughout this Motion and Memorandum, RMCB has sent its form Collection Letter to consumer debtors for a number of years.  This pattern and practice is employed by RMCB across the board.  Such a practice has clearly been adopted by RMCB as a standardized business practice that is generally applicable to the class as a whole. Accordingly, certification under (b)(2) is appropriate.

55. The requirements of Rule 23(b)(3) are also clearly satisfied here.  Each class member will assert that he or she received from RMCB a Collection Letter that derogated from the requirements of the FDCPA.  The common questions of law or fact predominate over individual questions and the class action mechanism is superior to other methods of adjudicating these claims.

56. The only possible individual issues relate to the computation of actual damages, although, as discussed above, there is no off-setting language for actual and statutory damages under the FCPDA and it will be relatively easy to determine and quantify such damages.  Furthermore, courts, have consistently refused to allow individual questions of damages to bar class treatment. Affiliated Ute Citizens of Utah v. United States, 406 U.S. 128, 92 S. Ct. 1456 (1972); Blackie v. Barrack, 524 F.2d 891, 905 (9th Cir. 1975), cert. denied, 429 U.S. 816 (1976); Wolgin v. Magic Marker Corp., 82 F.R.D. 168, 172-73 (E.D. Pa. 1979); Davis v. Northside Realty Associates, Inc., 95 F.R.D. 39, 45-47 (N.D. Ga. 1982) (individual "oddities and particular quirks" and determination of individual damage awards insufficient to deny certification); Leszcynski, 176 F. R. D. at 659.

57. In any event, the principles of law impacting each claim are the same and, if RMCB is found to have violated the FDCPA with respect to each class member, statutory damages are appropriate and readily ascertainable.  Common questions of law and fact, therefore, predominate over any individual questions. Fed. R. Civ. P. 23(b)(3).

**A Class Action is Superior to Other Methods of Adjudication**

58. The class action device is not only superior to other alternatives for adjudicating the claims presented by the instant case, but it is also the only feasible method because the class members "are in a poor position to seek legal redress,' either because they do not know

enough or because such redress is disproportionately expensive." <u>Dolqow v. Anderson</u>, 43

F.R.D. at 484-85.

59. Additionally, in this setting, a class action offers the only practical method for obtaining a

fair and efficient disposition of these claims.  <u>Deposit Guarantee National Bank</u>, 445 U.S. at

339, 100 S.Ct. at 1174.

60. The alternative to this class action would be a duplication of many actions. The needless and

wasteful multiplication of actions is precisely the evil that the class action procedure was

designed to avoid.  <u>Califano v. Yamasaki</u>, 442 U.S. 682, 690, 99 S.Ct. 2545, 61 L.Ed.2d 176

(1979).  <u>See also</u> <u>In re Agent Orange Prod. Liab. Litig.</u>, 818 F.2d 145 (2d Cir. 1987), <u>cert.</u>

<u>denied</u>, 484 U.S. 1004 (1988) (class treatment will promote judicial efficiency and economy

by avoiding duplicitous litigation of the class members' claims).  Class-wide resolution is

superior, particularly in class actions brought for the protection of consumers.

61. As a general matter, Rule 23 requires consideration of the interests of the class members in

individually controlling the prosecution of their separate actions.  In a complex suit against a

well-financed and aggressive Defendant, however, this interest is theoretical rather than

practical.  <u>See</u> <u>Advisory Committee Notes on Federal Rules of Civil Procedure</u>, 39 F.R.D. at

104.

62. Indeed, there is a serious likelihood that if the members of the proposed class are required to

sue individually, they will be unable to do so in light of the expenses of litigation in relation

to the damages suffered by individual class members.  Therefore, the class action is the only

viable way to reach a full trial and to obtain judicial relief.  <u>See</u> <u>Fifth Moorings</u>

<u>Condominium, Inc. v. Shere</u>, 81 F.R.D. 712, 719 (S.D. Fla. 1979) (discussing that the option

of individual actions presupposes persons economically powerful enough to take care of their own individual interests).

63. Although every class action case presents management challenges, no unusual problems are presented here. In evaluating the difficulties likely to be encountered in the management of a class action, the Court should compare these with the difficulties to be encountered in administering the litigation where the class action device is unavailable, and where the individual joinder of thousands of potential litigants were to occur.

64. As compared to the individual joinder of class members, the class action device presents far fewer management difficulties.  Class counsel has the capability of handling any issues likely to be encountered in managing this case as a class action.

## PROVISION OF NOTICE TO THE CLASS PURSUANT TO FED. R. CIV. P. 23(C)(2)

65. Based upon the ease of obtaining the actual names and addresses of the potential class members from RMCB's records, notice pursuant to Rule 23(c)(2) can be accomplished by direct mail.  The Court should also direct the utilization of a computer database to determine better addresses for any returned notice.

66. The most efficient manner in which to provide direct mail notice would be by the use of a third-party administrator who is well-versed at providing notice in class action litigation.  It is Counsels' well-founded belief that the use of such a third-party administrator will minimize the costs of direct mail notice.

67. Class membership could be readily ascertained by reviewing RMCB's files for records of the Collection Letter and the names and addresses of its recipients during the class period.

## CONCLUSION

68. Plaintiff was one of hundreds or thousands of recipients of the Collection Letter, which is substantially identical in each instance of its use and is machine-generated by RMCB.

Plaintiff has stated a valid cause of action under FDCPA and, based on the information gleaned through discovery, it must follow that hundreds of thousands of other potential plaintiffs constitute a class that meets the requirements of numerosity, commonality, and typicality.

69. Plaintiff's counsel is ready, willing, and able to provide zealous representation on behalf of the class members and no conflict of interest with respect to that representation is known or reasonably anticipated to arise in the pendency of this action.

70. A class action would be the superior method of adjudicating this matter due to the efficiency of a class action and the burden that would be imposed on the potential class members if they were expected to prosecute each of their cases individually.

71. For the foregoing reasons, the proposed class should be certified and this cause of action should proceed as a class action.

**CERTIFICATE OF GOOD FAITH CONFERENCE**

Per Local Rule 3.01(g) and this Court's Order at Doc. 44, Plaintiff's counsel personally spoke to Westley Holden, counsel for RMCB, via telephone on April 3, 2018, in good faith conference on the issue of class certification.  Westley Holden conferred separately with Carlos Ortiz, who confirmed that Defendant's Counsel does not agree to this Motion.

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on April 5, 2018, I electronically filed the foregoing with the Clerk of Court by using the CM/ECF system, which will case the foregoing to be sent via email to the following registered participants:

Carolos A. Ortiz, Esq.
cortiz@hinshawlaw.com
West A. Holden, Esq.
wholden@hinshawlaw.com
Attorneys for Defendant, RETRIEVAL-MASTERS CREDITORS BUREAU, INC.

Michael Massey, Esq.
massey@352law.com
Attorneys for Plaintiff

**Warner, Sechrest & Butts, P.A.**

*/s/ Michael D. Sechrest*
**Michael D. Sechrest, Esq.**
Florida Bar No.: 0150710
**D. Marc Warner, Esq.**
Florida Bar No. 0151238
**Sean G. Hipworth**
Florida Bar No.: 121246
5200 SW 91st Terrace, Suite 101
Gainesville, FL 32608
T: (352) 373-5922
F: (352) 373-5921
Attorneys for Plaintiff
*Designated Email Addresses:*
Sechrest@fbswlaw.com
Marc@fbswlaw.com
KimHart@fbswlaw.com
Lisa2@fbswlaw.com
shipworth@fbswlaw.com