## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## OCALA DIVISION

Case No.: 5:17-cv-426-Oc-40PRL

CHERYL RAFFERTY, on behalf of herself and all
others similarly situated,
     Plaintiff,

vs.

RETRIEVAL-MASTERS CREDITORS BUREAU,
INC., d/b/a RMCB Collection Agency, a foreign
corporation, and JEFFREY S. WOLLMAN, an
individual,
     Defendants.
_____/

## PLAINTIFF'S MOTION FOR CLASS CERTIFICATION WITH INCORPORATED MEMORANDUM OF LAW

Plaintiff, CHERYL RAFFERTY, by and through the undersigned counsel, files this

Motion for Class Certification, and in support thereof states:

## FACTUAL BACKGROUND

1.  The Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 *et seq.*, provides for

    the initiation of court proceedings to enjoin violations of the FDCPA and to secure such

    equitable relief as may be appropriate in each case.

2.  Plaintiff is a natural person and a resident of the State of Florida, and is a "Consumer" as

    defined by 15 U.S.C. § 1692a(3).  All of her debts that are relevant to this cause of action are

    consumer debts for personal, family, or household purposes. 15 U.S.C. § 1692a(5).

3.  Defendant, RETRIEVIAL-MASTERS CREDITORS BUREAU, INC. ("RMCB"), is a

    foreign limited liability company headquartered in the State of New York.

4.  Defendant, JEFFREY S. WOLLMAN, is the Chief Financial Officer of RMCB and oversees,

    direct, and supervises its debt collection activities.

5. RMCB and JEFFREY S. WOLLMAN are primarily in the business of acquiring and/or collecting third-party debts that are allegedly due to another.

6. RMCB and JEFFREY S. WOLLMAN regularly used the United States Postage Service in their attempts to collect debts owed to RMCB's clients.

7. On or after June 7, 2017, Plaintiff received a letter from RMCB, a true and correct copy of which was attached to the Complaint (Doc. 1) and to RMCB's Answer (Doc. 13), and which is attached hereto as **Exhibit A** (the "Collection Letter").

8. RMCB and JEFFREY S. WOLLMAN have attempted to collect a consumer debt allegedly owed by Plaintiff to Swiss Colony, a provider of packaged food gifts.

9. RMCB and JEFFREY S. WOLLMAN are each a "Debt Collector" as that term is defined by 15 U.S.C. §1692a(6) because of their debt collection activities.

10. On or about January 12, 2018, during initial discovery, Plaintiff requested, by her interrogatory number 4, that RMCB provide "the names, addresses, telephone numbers, dates of birth and employer of each person who drafted and/or created the [Collection Letter] and explain that person's role in the drafting/creation."

11. On or about February 22, 2018, RMCB provided its initial answer to that interrogatory, which stated, in its entirety: "RMCB has no responsive information to this interrogatory.  The subject letter has been in existence for over fifteen years and RMCB has no record of who drafted and/or created the letter." A true and correct copy of that portion of RMCB's answer to Plaintiff's interrogatory is attached hereto as **Exhibit B**.

12. On or about March 7, 2018, RMCB provided a supplemental answer to interrogatory number 4, which stated, in its entirety:

> RMCB has no responsive information to this interrogatory.  The subject letter has been in existence and use for over fifteen years and RMCB has no record of who

initially drafted, approved and/or created the letter.  The subject letter has not since been redrafted, reapproved and/or recreated.  When RMCB receives electronic data from the creditor, Swiss Colony, regarding unpaid, outstanding account balances, RMCB's IT team uploads that data into RMCB's systems, which triggers collection correspondence to be populated regarding the individual who owes the account balance to Swiss Colony, and then mailed.  There is no "drafting" or "approval" process involved with that, and, as mentioned above, the form of the subject letter was created over 15 years ago.  Therefore, only the IT team has direct involvement with the inputting of a debtor's specific data into the letter.  This team only performs IT functions, and are not debt collectors (i.e. they are located in Defendant's server room, and do not perform any debt collection activities).

The above response was provided and verified by the Chief Financial Officer of RMCB.  A true and correct copy of that portion of RMCB's supplemental answer to Plaintiff's interrogatory is attached hereto as **Exhibit C**.

13. RMCB's website claims that RMCB "prints and mails millions of pieces of correspondence on behalf of [its] clients each year." A true and correct copy of the "Process" page of RMCB's website, accessed on April 2, 2018, is attached hereto as **Exhibit D** with the above-quoted portion highlighted.

14. On or about January 12, 2018, Plaintiff submitted a request for the production of documents. Request number 5 asked for Defendant to produce the following documents: "Any and all similar (sic) to the [Collection Letter] sent by Defendant on or between the following dates: 9/22/2016 to 9/21/2017 to recipients within the State of Florida."

15. RMCB's response included the statement that "hundreds of thousands" of such letters were mailed, notwithstanding numerous other stated objections.  A true and correct copy of that portion of RMCB's response to Plaintiff's request for production is attached hereto as **Exhibit E** with the above-quoted portion highlighted.

## PROPOSED CLASS

16. The proposed class consists of all Florida consumers who received RMCB's form Collection Letter that contained at least one of RMCB's alleged violations of the FDCPA. The class period begins one year prior to the filing of the instant action.

17. A district court considering a motion for class certification should not decide the case's merits at the class certification stage. Abraham v. WPX Prod. Prods., LLC, 319 F.R.D. 169, 219 (D.N.M. 2016); Daye v. Cmty. Fin. Serv. Ctrs., LLC, 313 F.R.D. 147, 159 (D.N.M. 2016) (citing Amgen, Inc. v. Conn. Ret. Plans & Trust Funds, 133 S. Ct. 1184, 1194-95, 185 L. Ed. 2d 308 (2013) ("Although we have cautioned that a court's class-certification analysis must be 'rigorous' and may 'entail some overlap with the merits of the plaintiff's underlying claim,' Rule 23 grants courts no license to engage in freeranging merits inquiries at the certification stage. Merits questions may be considered to the extent -- but only to the extent -- that they are relevant to determining whether the Rule 23 prerequisites for class certification are satisfied.").

18. A court should find facts for the purposes of class certification by a preponderance of the evidence and allow the parties to challenge these findings during the subsequent case's merits stage. Id.

## LEGAL STANDARD

19. The FDCPA, 15 U.S.C. § 162k(a) provides:

(a) . . . any debt collector who fails to comply with any provision of this subchapter with respect to any person is liable to such person in an amount equal to the sum of --

(1) any actual damage sustained by such person as a result of such failure;

(2)(A) in the case of any action by an individual, such additional damages as the court may allow, but not exceeding $1,000; or

(B) in the case of a class action, (i) such amount for each named plaintiff as could be recovered under subparagraph (A), and (ii) such amount as the court may allow for all other class members, without regard to a minimum individual recovery, not to exceed the lesser of $500,000 or 1 per centum of the net worth of the debt collector; and

(3) in the case of any successful action to enforce the foregoing liability, the costs of the action, together with a reasonable attorney's fee as determined by the court.

In other words, the FDCPA provides for the sum of actual damages *and* statutory damages,

costs, and reasonable attorney's fees.

20. The Federal Rules of Civil Procedure, Rule 23, provides, in relevant part:

(a) PREREQUISITES. One or more members of a class may sue or be sued as representative parties on behalf of all members only if:

(1) the class is so numerous that joinder of all members is impracticable;

(2) there are questions of law or fact common to the class;

(3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and

(4) the representative parties will fairly and adequately protect the interests of the class.

(b) TYPES OF CLASS ACTIONS. A class action may be maintained if Rule 23(a) is satisfied and if:

(1) prosecuting separate actions by or against individual class members would create a risk of:

(A) inconsistent or varying adjudications with respect to individual class members that would establish incompatible standards of conduct for the party opposing the class; or

(B) adjudications with respect to individual class members that, as a practical matter, would be dispositive of the interests of the other members not parties to the individual adjudications or would substantially impair or impede their ability to protect their interests;

(2) the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole; or

(3) the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy. The matters pertinent to these findings include:

(A) the class members' interests in individually controlling the prosecution or defense of separate actions;

(B) the extent and nature of any litigation concerning the controversy already begun by or against class members;

(C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and

(D) the likely difficulties in managing a class action.

21. In other words, "Rule 23(a) states four threshold requirements applicable to all class actions: (1) numerosity (a 'class [so large] that joinder of all members is impracticable'); (2) commonality ('questions of law or fact common to the class'); (3) typicality (named parties' claims or defenses 'are typical . . . of the class'); and (4) adequacy of representation (representatives 'will fairly and adequately protect the interests of the class')." Amchem Products, Inc. v. Windsor, 521 U.S. 591, 613 (1997).

22. In addition to the requirements of Rule 23, the proposed class must satisfy at least one of the three requirements in Rule 23(b). Wal-Mart Stores, Inc. v. Dukes, 131 S. Ct. 2541, 2548 (2011).

**Rule 23(a)(1): Numerosity**

23. A plaintiff seeking to certify a class must describe the class with sufficient certainty to permit the identification of persons as members of the class. See Pottinger v. City of Miami, 720 F. Supp. 955, 957 (S.D. Fla. 1989).

24. The "numerosity" requirement is more accurately described as an "impracticability of joinder" requirement.  See Hastings-Murtagh v. Texas Air Corp., 119 F.R.D. 450, 459 (S.D. Fla. 1988); Pruitt v. Allied Chem. Corp., 85 F.R.D. 100, 105 (E.D. Va. 1980).

25. Impracticability does not mean that joinder must be impossible, but only means that the Court must find that the difficulty or inconvenience of joining all class members makes class litigation desirable.  In re Alexander Grant & Co. Litigation, 110 F.R.D. 528, 533-534 (S.D. Fla. 1988); 7A Wright, Miller & Kane, *Federal Practice & Procedure* § 1762 (1986).

26. In making this finding, the Court may consider relevant factors other than just the number of class members.  For example, the Court should consider "the geographical dispersion of the class, the ease with which class members may be identified, the nature of the action, and the size of each plaintiffs claim."  Zeidman v. J. Ray McDermott & Co., Inc., 651 F.2d 1030, 1038 (5th Cir. 1981); Kilgo v. Bowman Transp. Inc., 789 F.2d 859, 878 (11th Cir. 1986); Lawson v. Wainwright, 108 F.R.D. 450, 454 (S.D. Fla. 1986).

27. A class is sufficiently defined and ascertainable if it is "administratively feasible for the court to determine whether a particular individual is a member." Hayes v. Wal-Mart Stores, Inc., --- F.3d --- , 2013 WL 3957757, at *3 (3d Cir. 2013); O'Connor v. Boeing N. Am., Inc., 184 F.R.D. 311, 319 (C.D. Cal. 1998); see Pottinger v. Miami, 720 F. Supp. 955, 957 (S.D. Fla. 1989) (The "description of the class must be sufficiently definite to enable the court to determine if a particular individual is a member of the proposed class").

28. A class proponent is not required to demonstrate or prove at the class certification stage that there is an administratively feasible way to determine who is in the class. Briseno v. ConAgra Foods, Inc., 844 F.3d 1121, 1124-25 (9th Cir. 2017).

### Rule 23(a)(2): Commonality

29. No qualitative or quantitative test will determine commonality, and the legal claims need not be completely identical—in fact, it is only necessary to find at least one issue common to all class members.  Pottinger, 720 F. Supp. at 958.

30. Moreover, "[t]he threshold of 'commonality' is not high.  Aimed in part at determining whether there is a need for combined treatment and a benefit to be derived there from, the Rule requires only that resolution of the common questions affect all or a substantial number of the class members." <u>Jenkins v. Raymark Indus., Inc.</u>, 782 F.2d 468, 473 (5th Cir. 1986).

31. The commonality test is qualitative rather than quantitative, and there need be only a single issue common to all members of the class. <u>Sterling v. Velsicol Chem. Corp.</u>, 855 F.2d 1188, 1197 (6th Cir. 1988) ("mere fact that questions peculiar to each individual member of the class remain after the common questions of the defendant's liability have been resolved does not dictate the conclusion that a class action is impermissible.").

<strong><u>Rule 23(a)(3): Typicality</u></strong>

32. Linked closely with the Rule 23(a)(2) requirement of commonality is the prerequisite that a class action may be maintained only if "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed. R. Civ. P. Rule 23(a)(3).

33. The Eleventh Circuit has explained that typicality requires the existence of:

> A nexus between the class representative's claims or defenses and the common questions of law or fact that unite the class.  A sufficient nexus is established if the claims or defenses of the class and the class representative arise from the same event or pattern or practice and are based on the same legal theory.  Typicality, however, does not require identical claims or defenses.  A factual variation will not render a class representative's claim atypical unless the factual position of the representative markedly differs from that of other members of the class.

> <u>Kornberg v. Carnival Cruises Lines, Inc.</u>, 741 F.2d 1332, 1337 (11th Cir. 1984), <u>cert</u>. <u>denied</u>, 471 U.S. 1004 (1985).

34. The primary concern is whether the "named representatives" claims have the same essential characteristics as the claims of the class at large." <u>Appleyard v. Wallace</u>, 754 F.2d 955, 958 (11th Cir. 1985), <u>disagreed with on other grounds</u>, <u>Green v. Mansour</u>, 474 U.S. 64, 67, 106 S.

Ct. 423, 425 (1985) (quoting De La Fuente v. Stokely-Van Camp, Inc., 713 F.2d 225, (7th Cir. 1983)); see also Lawson, 108 F.R.D. at 456; Pottinger, 720 F. Supp. at 959.

35. "Typicality" refers to the nature of the representative's claims, not the individual characteristics of each class representatives' transactions with the defendant, which are irrelevant.  See Pottinger, 720 F. Supp. at 959; Brown v. Cameron-Brown Co., 92 F.R.D. 32, 38 (E.D. Va. 1981); *Newberg on Class Actions* §§ 22.11-22.18 (2d ed. 1985).

36. Even if each class member has not been affected in exactly the same way by a defendant's conduct, such factual differences will not render the representative's claims atypical. Appleyard, 754 F.2d at 958.  Moreover, differences in each class member's claim for damages do not preclude class certification.  Kornberg, 741 F.2d at 1337; In re Alexander Grant & Co. Litigation, 110 F.R.D. at 535.

### Rule 23(a)(4): Adequacy of Representation

37. Rule 23(a)(4) requires that the representative parties will fairly and adequately protect class interests. This requirement is met "if the named representatives have interests in common with proposed class members and the representatives and their qualified attorneys will properly prosecute the class action." Pottinger, 720 F. Supp. at 959 (citing Gonzales v. Cassidy, 474 F.2d 67, 72 (5th Cir. 1973)).

38. The class representative must fairly and adequately represent the interests of the class. Fed. R. Civ. P. 23(a)(4). In considering the adequacy of legal counsel for the class, the Court must consider "counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action." Fed. R. Civ. P. 23(g)(1)(a)(ii).

39. Adequacy of representation is established by showing that: (1) the named plaintiff does not have interests antagonistic to those of the class; and (2) plaintiff's counsel are qualified, experienced, and generally able to conduct the proposed litigation. Epstein v. MCA, Inc., 179

F.3d 641 (9th Cir. 1999); <u>Lerwill v. Inflight Motion Pictures, Inc.</u>, 582 F.2d 507, 512 (9th

Cir. 1978).

## Whether Class Certification is Appropriate

40. Class certification is warranted when a defendant has adopted a standardized business

practice that is generally applicable to the class as a whole. <u>Leszcynski</u>, 176 F.R.D. at 673.

41. "'Generally applicable' under Rule 23(b)(2) has been interpreted to mean that the party

opposing the class 'has acted in a consistent manner towards members of the class so that his

actions may be viewed as part of a pattern of activity, or to establish a regulatory scheme, to

all members.'" <u>Id</u>. (Citing 7A C. Wright & A. Miller, *Federal Practice and Procedure*,

section 1775 at 449).

42. In deciding whether common questions of law or fact predominate under Rule 23(b)(3),

courts focus on the issue of liability.  <u>Dura-Bilt Corp. v. Chase Manhattan Corp.</u>, 89 F.R.D.

87, 93 (S.D.N.Y. 1981).  Factual variances will not defeat class certification.  <u>Armstead v.

Pingree</u>, 629 F. Supp. 273, 280 (M.D. Fla. 1986); <u>Indianer v. Franklin Life Ins. Co.</u>, 113

F.R.D. 595 (S.D. Fla. 1986), <u>overruled in part on other grounds by</u> <u>Ericsson GE Mobile

Communications, Inc. v. Motorola Communications & Elecs., Inc.</u>, 120 F.3d 216, 220 (11th

Cir. 1997); <u>Schmidt v. Interstate Fed. Sav. & L. Ass'n.</u>, 74 F.R.D. 423, 427 (D.D.C. 1977).

## Whether a Class Action is Superior to Other Methods of Adjudication

43. A class action is the only feasible method where those who have been injured "are in a poor

position to seek legal redress, either because they do not know enough or because such

redress is disproportionately expensive." <u>Dolgow v. Anderson</u>, 43 F.R.D. 472, 484-85

(E.D.N.Y. 1968), <u>distinguished on other grounds by</u> <u>Eisen v. Carlisle & Jacquelin</u>, 417 U.S.

156, 178 (1974) (quoting Kalven and Rosenfield, *The Contemporary Function of the Class

Suit*, 8 U. Chi. L. Rev. 684, 686 (1941)).

44. A class action is superior if it is a practical way to obtain a fair and efficient disposition of the claims of the class, where relief might otherwise not be economically feasible. <u>Deposit Guaranty National Bank v. Roper</u>, 445 U.S. 326, 339, 100 S. Ct. 1166, 1174 (1980).

## **DISCUSSION**

### **Numerosity**

45. The proposed class is readily identifiable and ascertainable, as it consists of anyone who received RMCB's form Collection Letter containing an alleged violation of the FDCPA during the specified time period.

46. There is no speculation involved in the numerosity of the proposed class. <u>Contra</u> RMCB Response (Doc. 74), p. 4.  Based upon RMCB's answers to Plaintiff's interrogatories as well as its advertising materials, this class of potential claimants numbers in the hundreds or thousands (even "millions," in RMCB's own words). <u>See</u> **Exhibits A**, **B**, **C**, **D**, and **E**, attached hereto. It would be impracticable to join all members.

47. The class is reasonably believed to be geographically distributed across the State of Florida and not concentrated in any particular locality.

48. Merely receiving a collection letter that violates the FDCPA gives rise to a cause of action and requires no subjective analysis by the Court—it is akin to a strict liability standard. <u>LeBlanc v. Unifund CCR Partners</u>, 601 F.3d 1185, 1190; <u>see</u> 15 U.S.C. § 1692k.

49. These facts and reasonably drawn conclusions establish that the proposed class is inescapably so numerous as to make individual joinder of class members and the individual claims based on RMCB acts and omissions impracticable.  <u>See, e.g.,</u> <u>Cox v. American Cast Iron Pipe Company</u>, 784 F.2d 1546, 1553 (11th Cir. 1988) (generally less than 21 members is inadequate while more than forty is adequate); <u>Jack v. American Linen Supply Co.</u>, 498 F.2d 122, 124 (5th Cir. 1974) (51 class members found to satisfy numerosity requirement); <u>Brady</u>

v. Thurston Motor Lines, 726 F.2d 136, 145 (4th Cir. 1984), cert. denied, 469 U.S. 827

(1985) (class of 74 persons met the numerosity requirement); Sagers v. Yellow Freight

Systems, Inc., 529 F.2d 721, 734 (5th Cir. 1976) (110 members clearly was a sufficient

number to meet the numerosity requirement); Powers v. Stuart-James Co., Inc., 707 F. Supp.

499, 501-02 (M.D. Fla. 1989) (estimate of 500 investor class members certified as class).

50. The proposed class will live or die with whether the collection letter violates the FDCPA—

*i.e.*, their *recovery* is dependent on a finding of liability, but not their membership in the

class. In other words, the class is clearly defined, and only imprecisely defined as to a

specific number of claimants because RMCB has so far been unwilling or unable to comply

with discovery requests to elicit the identities of who received identical collection letters.

51. Prosecuting separate actions would create a risk of inconsistent or varying adjudications with

respect to individual class members that would establish incompatible standards of conduct

for the party opposing the class. Fed. R. Civ. P. 23(b)(1)(A).

52. Furthermore, prosecuting separate actions would create a risk of adjudications with respect to

individual class members that, as a practical matter, would be dispositive of the interests of

the other members not parties to the individual adjudications or would substantially impair or

impede their ability to protect their interests. Fed. R. Civ. P. 23(b)(1)(B).

53. Defendants may assert that Plaintiff must *prove* there are other claimants in existence, as

stated in North American Biologicals, Inc. v. Seattle Plasma Corp., 931 F.2d 839 (11th Cir.

1991), but Plaintiff has introduced record evidence (through RMCB's own admissions during

discovery) as to the identity of a potential class of claimants, which consist of "more than one

finite claim by one or more persons." Id. at 841.

54. Defendants may also argue that Plaintiff's allegations as to numerosity are "speculative." Marcus v. BMW of North America, LLC, 687 F.3d 583 (3d Cir. 2012) (a plaintiff may not simply rely on the nationwide presence of a defendant to satisfy the numerosity requirement). However, there is no speculation involved in the numerosity of this proposed class—the only unknown is the identity of each class member, which should be ascertainable from Defendants' records.

55. Florida Administrative Code 69V-180.0802 (titled "Consumer Collection Agency Records") requires RMCB to maintain basic information about alleged debts including, at the minimum, documentation provided by the creditor. Among other detailed information, 69V-180.080(3) requires RMCB to keep an account of debtors' addresses. See also Fla. Stat. § 559.5556 (Maintenance of Records). Therefore, because RMCB is legally required to keep detailed records of what is sent to each customer and to retain the contact information of the persons to whom the letters were sent, it will be a straightforward task to see exactly who in Florida received a letter with the same improper validation notice. Everyone who received the letter is a member of the proposed class. The identity of those persons is easily ascertained using RMCB's records, if they were made available pursuant to outstanding discovery requests. Hayes, 2013 WL 3957757 at *3; O'Connnor, 184 F.R.D. at 319.

56. Plaintiff has no burden at this point to demonstrate the administrative feasibility of identifying class members. Briseno, 844 F.3d at 1124-25. However, it *is* administratively feasible for the Court to determine whether a person is a member of the class because RMCB uses the same collection letter, apparently in all instances. Moreover, whether the recipient was a resident of Florida should be apparent from records kept by RMCB in the ordinary course of business. Id. Accordingly, Plaintiff has met its burden establishing that the

proposed class is adequately defined and clearly ascertainable. <u>Little v. T-Mobile USA, Inc.</u>, 691 F.3d 1302, 1304 (11th Cir. 2012).

<u>**Commonality**</u>

57. The commonality requirement is easily met because RMCB's Collection Letter, based upon its responses to Plaintiff's discovery requests relating to its business practices, has not been modified and has been in use for the past 15 years.  The only parts of the letter that change are the date, the name and address of the recipient, and the description and amount of the debt, while the language that is the subject of this litigation is apparently common to all such letters. <u>See</u> **Exhibits B**, **C**, and **E**, attached hereto.

58. The questions of law or fact common to class members predominate over any questions affecting only individual members, and a class action is superior to other available methods for fairly and efficiently adjudicating this controversy. Fed. R. Civ. P. 23(b)(3).  These common questions of law and fact include, without limitation:

    a. Whether RMCB violated Sections 1692g *et seq.* of the FDCPA in its regular business practice of consumer debt collection.

    b. Whether RMCB's Collection Letter violated the FDCPA by including language on the front page of the Collection Letter that overshadowed the validation notice contained on the reverse side under the least-sophisticated consumer standard;

    c. Whether Plaintiff and the class have been injured by the RMCB's conduct;

    d. Whether Plaintiff and the class have sustained damages and are entitled to restitution as a result of Defendants' wrongdoing and if so, what is the proper measure and appropriate statutory formula to be applied in determining such damages and restitution;

    e. Whether Plaintiff and the class are entitled to statutory damages; and

f.   Whether Plaintiff and the class are entitled to declaratory and/or injunctive relief.

59. The focus is on the debt collector's conduct, not the consumer's. <u>Keele v. Wexler</u>, 149 F.3d

589 (7th Cir. 1998). Whether plaintiff even receives an offending communication is

irrelevant to liability. <u>Morgan v. Credit Adjustment Board, Inc.</u>, 999 F. Supp. 803, 805-06

(E.D. Va. 1998). Likewise, whether Plaintiff or anyone in the class read the letter is "of no

moment on the issue of whether a violation has occurred." <u>Kuhn v. Account Control</u>

<u>Technology, Inc.</u>, 865 F. Supp. 1443, 1450 (D. Nev. 1994); <u>Russell v. Equifax A.R.S.</u>, 74

F.3d 30, 33 (2nd Cir.1996) (holding the FDCPA is a remedial, strict liability statute requiring

no proof of deception or actual damages to obtain its statutory remedies); <u>Savino v.</u>

<u>Computer Credit, Inc.</u>, 960 F. Supp. 599, 605 (E.D.N.Y.1997) (rejecting as "contrary to the

applicable law" the debt collector's argument that consumer was barred from receiving

damages because he did not receive the letter). The damages sought are the same for the

entire class because the amount of statutory damages is fixed. <u>See</u> 15 U.S.C. § 1692k

(a)(2)(B). Of course, each consumer's reaction to a debt collection letter will be a mixed bag.

What remains the same is RMCB's collection letter.

## **Typicality**

60. Questions of fact in this case are based on the same legal theories as Plaintiff's claims and

are typical of the class, which all arise from the same operative facts.   Plaintiff's claim is not

factually distinguishable from the claims of the class members because each class member

received the same form Collection Letter from RMCB.

61. Plaintiff's claim is not only typical but identical to all class members in that they seek the

same remedy: actual damages, if applicable, plus statutory damages for FDCPA violations.

62. Finally, the typicality of claims requirement of Rule 23(a)(3) and the adequacy of

representation requirement of Rule 23(a)(4) (discussed below) are related.   Both are intended

to prevent the representative from having interests that conflict with those of the class members that Plaintiff purports to represent. Mersay v. First Republic Corp. of America, 43 F.R.D. 465, 468 (S.D.N.Y. 1968).  As discussed below, no such conflicts are present between Plaintiff's interests and those of the class.  Thus, the requirements of Rule 23(a)(3) are satisfied, and class certification should be granted.

### Adequacy of Representation

63. Plaintiff has no interest adverse or antagonistic to the interest of the other members of the class because there is no statutory set off between actual and statutory damages for Plaintiff and the class members under the terms of the FDCPA because of the statute allows a successful claimant to recover "the sum of" actual damages, statutory damages, costs, and reasonable attorney's fees. 15 U.S.C. § 1692k(a).

64. Furthermore, Plaintiff clearly stated her interest in preventing RMCB from continuing its violative practices and acting as a class representative affords her that opportunity should she prevail in litigation, on behalf of herself and the entire class. See Rafferty Deposition (Doc. 74-2), 97:7-99:7, a copy of which is attached as **Exhibit F**.

65. Plaintiff is not required to be actively involved in the filing of court documents or otherwise fully briefed on their contents—Plaintiff, like RMCB, are entitled to rely on the advice of legal counsel. Plaintiff is not required to fully understand the mechanics of class action litigation or provide testimony as an expert witness thereon. Here, Plaintiff is the quintessential "unsophisticated consumer" and has already shown via her participation in both written discovery and her deposition in Tampa that she is willing, able and capable of representing her fellow unsophisticated consumers. Moreover, because her deposition has already been taken and she has already responded to RMCB's written discovery, there is little if anything left for Plaintiff to do other than attend trial.

66. Each class member has the same interest in compelling RMCB to strictly abide by the provisions of the FDCPA.

67. Courts considering FDCPA class actions challenging form collection letters have found named plaintiffs who received versions of the challenged collection letters to be adequate class representatives for purposes of Rule 23(a)(4). Harrison v. Great Springwaters of Am., Inc., No. 93 Civ. 6106, 1997 WL 469996, at *6 (citing Colbert v. Trans Union Corp., 1995 WL 20821 (E.D. Pa. Jan. 12, 1995)); Carr v. Trans Union Corp., 1995 WL 20865 (E.D. Pa. Jan. 12, 1995); Beasley v. Blatt, 1994 WL 362185, at *4 (N.D. Ill. July 11, 1994).

68. Representation is "adequate" if the class representatives *are not disqualified* because of interests that are antagonistic to the remainder of the class. Ostrof v. State Farm Mut. Auto. Ins. Co., 200 F.R.D. 521, 530 (D. Md. 2001) (emphasis added).

69. Plaintiff will fairly and adequately protect the interest of the class because there is no conflict or antagonism between Plaintiff and the class members and Plaintiff has retained experienced and competent attorneys with experience in complex litigation to represent the class.

70. Plaintiff's attorneys are active practitioners who will protect the interests of the class. Michael Massey, Esq., has represented consumers in various consumer rights actions under federal statutes, including the FDCPA. See Wunsch v. Hengesbach & Hengesbach, P.A., Case No. 5:15-cv-00198-JSM-PRL (M.D. Fla. 2015)); Williams v. First Advantage LNS Screening Solutions, Inc., 238 F. Supp. 3d (N.D. Fla. 2017) (resulting in a $250,000 in compensatory damages and $3.3 million in punitive damages jury verdict under the Fair Credit Reporting Act)).

71. Michael D. Sechrest, Esq., is a Florida Board Certified Lawyer in both Civil Trial and Construction Law, and has been involved in over fifty trials in both State and Federal trial

courts, including civil rights and federal question issues before this Court, and has co-counseled in trial before Magistrate Lammens.  Mr. Sechrest also has extensive experience litigating complex construction defect cases and his firm represents plaintiffs in multi-district litigation product liability cases as well as representing parties in single FDCPA issues.  Mr. Sechrest's firm regularly represents plaintiffs in multi-defendant commercial, medical malpractice, and construction litigation, all of which present factual issues that are significantly more technical and complex than the issues presented in this case.  The complexity, should the class be certified, would be providing notice to class members, which Plaintiff intends to accomplish via a third-party administrator, as discussed below.

72. Plaintiffs' attorneys' knowledge of the FDCPA is readily apparent from the case's docket, such as their summary judgment motion (Doc. 14), their reply to the Defendant's summary judgment motion (Doc. 56), and the motion to compel (Doc. 57).  Moreover, the two law firms of Plaintiff's attorneys can share and allocate resources with efficiency and ensure this matter is attended to as zealous advocates.

73. Plaintiff's attorneys have never been found to be inadequate class counsel and have decades of combined experience in litigating claims under other federal consumer protection statutes, complex litigation, and civil litigation, generally.

74. While "unsupported representations about [an attorney's] ability to serve as class counsel" do not meet the adequacy requirement, Plaintiff makes factual allegations regarding her counsels' experience, which is extensive, and demonstrates their ability to handle complex matters in civil litigation. See Amarelis v. Notter Sch. of Culinary Arts, LLC, No. 6:13-cv-54-Orl-31KRS, 2013 U.S. Dist. LEXIS 154223, at *22 (M.D. Fla. Oct. 8, 2013).

## Class Certification is Appropriate

75. In addition to the four prerequisites to class representation discussed above, the class action complaint must also satisfy at least one requirement under subsection (b) of Rule 23.

76. Plaintiff asserts that this case and the proposed class should be certified under subsection (b)(2) for the relief requested in the Complaint as RMCB has acted, and continues to act, on grounds that are generally applicable to the class, thereby making appropriate final judgment and/or declaratory relief with respect to the class as a whole.

77. As has been discussed throughout this Motion and Memorandum, RMCB has sent its form Collection Letter to consumer debtors for a number of years.  This pattern and practice is employed by RMCB across the board.  Such a practice has clearly been adopted by RMCB as a standardized business practice that is generally applicable to the class as a whole. Accordingly, certification under (b)(2) is appropriate.

78. The requirements of Rule 23(b)(3) are also clearly satisfied here.  Each class member will assert that he or she received from RMCB a Collection Letter that derogated from the requirements of the FDCPA.  The common questions of law or fact predominate over individual questions and the class action mechanism is superior to other methods of adjudicating these claims.

79. The only possible individual issues relate to the computation of actual damages, although, as discussed above, there is no off-setting language for actual and statutory damages under the FCPDA and it will be relatively easy to determine and quantify such damages.  Furthermore, courts, have consistently refused to allow individual questions of damages to bar class treatment. Affiliated Ute Citizens of Utah v. United States, 406 U.S. 128, 92 S. Ct. 1456 (1972); Blackie v. Barrack, 524 F.2d 891, 905 (9th Cir. 1975), cert. denied, 429 U.S. 816 (1976); Wolgin v. Magic Marker Corp., 82 F.R.D. 168, 172-73 (E.D. Pa. 1979); Davis v.

Northside Realty Associates, Inc., 95 F.R.D. 39, 45-47 (N.D. Ga. 1982) (individual "oddities

and particular quirks" and determination of individual damage awards insufficient to deny

certification); Leszcynski, 176 F. R. D. at 659.

80. In any event, the principles of law impacting each claim are the same and, if RMCB is found

to have violated the FDCPA with respect to each class member, statutory damages are

appropriate and readily ascertainable.  Common questions of law and fact, therefore,

predominate over any individual questions. Fed. R. Civ. P. 23(b)(3).

### A Class Action is Superior to Other Methods of Adjudication

81. Class actions are not only superior to other alternatives for adjudicating the claims presented

by the instant case, but it is also the only feasible method because the class members "are in a

poor position to seek legal redress,' either because they do not know enough or because such

redress is disproportionately expensive." Dolqow v. Anderson, 43 F.R.D. at 484-85.

82. Additionally, in this setting, a class action offers the only practical method for obtaining a

fair and efficient disposition of these claims.  Deposit Guarantee National Bank, 445 U.S. at

339, 100 S. Ct. at 1174.

83. The alternative to this class action would be a duplication of many actions. The needless and

wasteful multiplication of actions is precisely the evil that the class action procedure was

designed to avoid.  Califano v. Yamasaki, 442 U.S. 682, 690, 99 S.Ct. 2545, 61 L.Ed.2d 176

(1979).  See also In re Agent Orange Prod. Liab. Litig., 818 F.2d 145 (2d Cir. 1987), cert.

denied, 484 U.S. 1004 (1988) (class treatment will promote judicial efficiency and economy

by avoiding duplicitous litigation of the class members' claims).  Class-wide resolution is

superior, particularly in class actions brought for the protection of consumers.

84. Generally, Rule 23 requires considering of the interests of each class member in individually

controlling the prosecution of their separate actions.  In a complex suit against a well-

financed and aggressive Defendant, however, this interest is theoretical rather than practical. See Advisory Committee Notes on Federal Rules of Civil Procedure, 39 F.R.D. at 104.

85. Indeed, there is a serious likelihood that if the members of the class are required to sue individually, they will be unable to do so in light of the expenses of litigation relative to the damages suffered by or available to individual class members. Therefore, the class action is the only viable way to reach a full trial and to obtain judicial relief. See Fifth Moorings Condominium, Inc. v. Shere, 81 F.R.D. 712, 719 (S.D. Fla. 1979) (discussing that the option of individual actions presupposes persons economically powerful enough to take care of their own individual interests).

86. "Ultimately, the unfortunate reality…that most of Defendant's . . . FDCPA violations would probably go unnoticed absent this lawsuit" must be balanced against the possibility that any class recovery may be relatively minimal. Jacobson v. Persolve, LLC, 2015 WL 3523696 at *7 (N.D. Cal. 2015) (citing); Kalish v. Karp & Kalamotousakis, LLP, 246 F.R.D. 461 (S.D.N.Y. 2007)); Mitchell v. LVNV Funding, LLC, 2015 WL 7016343, at *10-11 (N.D. Ind. 2015) (citing Miller v. McCalla, 198 F.R.D. 503, 506 (N.D. Ill. 2001) ("[I]f class actions can be said to have a main point, it is to allow the aggregation of many small claims that would otherwise not be worth bringing, and thus to help deter lawless defendants from committing piecemeal highway robbery, a nickel here and a nickel there, that adds up to real money, but which would not be worth the while of an individual plaintiff to sue on.").

87. Neither the FDCPA nor Rule 23 require that the recovery per class member be significant for the class suit to go forward. Hoobs, *et al.*, Fair Debt Collection, Nat'l Cons. Law Center § 6.6.2.7.1, at 379.

88. Although every class action case presents management challenges, no unusual problems are presented here. In evaluating the difficulties likely to be encountered in the management of a class action, the Court should compare these with the difficulties to be encountered in administering the litigation where the class action device is unavailable, and where the individual joinder of thousands of potential litigants were to occur.

89. As compared to the individual joinder of class members, the class action device presents far fewer management difficulties.  Class counsel has the capability of handling any issues likely to be encountered in managing this case as a class action.

### The Proposed Class is Not a "Fail-Safe" Class

90. A class definition is "self-defeating" if "the court is forced to consider the merits of the controversy and to deny [certification] because of an inability to define who belongs in [the class] before there has been a full trial"). Armstrong v. Chicago Park Dist., 117 F.R.D. 623, 626-27 (N.D. Ill. 1987). "A fail-safe class is improper because it shields the putative class members from receiving an adverse judgment. Either the class members win or, by virtue of losing, they are not in the class and, therefore, not bound by the judgment." Usry v. Equityexperts.org, LLC, No. 1:16-cv-010, 2018 U.S. Dist. LEXIS 25935, at *6-7 (S.D. Ga. Feb. 16, 2018) (quoting Randleman v. Fidelity Nat. Title Ins. Co., 646 F.3d 347, 352 (6th Cir. 2011)).

91. The proposed class is not "self-defeating" because identifying members of the class involves pure questions of fact (whether a person received a collection letter of the form used by RMCB and received by Plaintiff) and not any questions of law. A determination of liability is not required to ascertain the class. Moreover, there is no danger that a strong plaintiff will choose to opt out and pursue their own cases – especially with the availability of statutory damages. The likelihood that even a single class member would choose to opt out and file

their own lawsuit is virtually zero because of the nature of this action – the sending of one illegal letter often does not justify the expense of an individual lawsuit. The nature of this lawsuit is fundamentally different than claims made in other lawsuits with "self defeating" issues such as Agent Orange or Dalkon Shield cases where people were personally injured, and the injuries and emotional distress damages are necessarily very high.

92. The members of the proposed class include any person who received a collection letter substantially of the form of the letter received by Plaintiff. Whether Plaintiff, or the class as a whole, prevails on their respective claims has nothing to do with class membership. Contra Usry, No. 1:16-cv-010, 2018 U.S. Dist. LEXIS 25935, at *6-7 ("A fail-safe class is improper because it shields the putative class members from receiving an adverse judgment. *Either the class members win or, by virtue of losing, they are not in the class* and, therefore, not bound by the judgment.") (emphasis added).

93. Finally, the structure and language of the FDCPA itself supports the fact that class actions are particularly helpful and appropriate in resolving these claims. See 15 U.S.C. § 1692k (discussing statutory damages and specifically referring to the situation when a class action is pursued). That 1962k(a)(2)(B) specifically addresses damages in the event of a class action strongly supports the appropriateness of class actions in FDCPA claims. Congress encourages enforcement of consumer laws such as the FDCPA by a system of "private attorney general," even where the amount of damages at stake would be too small to support litigation if the plaintiff had to absorb the costs of attorneys' fees. See, e.g., De Jesus v. Banco Popular de Puerto Rico, 918 F.2d 232, 234 (1st Cir. 1990) (construing the Truth in Lending Act). The idea FDCPA claims such as the instant case are somehow "self-defeating" is belied by the FDCPA itself.

**PROVISION OF NOTICE TO THE CLASS PURSUANT TO FED. R. CIV. P. 23(C)(2)**

94. Based upon the ease of obtaining the actual names and addresses of the potential class members from RMCB's records, notice pursuant to Rule 23(c)(2) can be accomplished by direct mail.  The Court should also direct the utilization of a computer database to determine better addresses for any returned notice.

95. The most efficient manner in which to provide direct mail notice would be by the use of a third-party administrator who is well-versed at providing notice in class action litigation.  It is Counsels' well-founded belief that the use of such a third-party administrator will minimize the costs of direct mail notice.

96. Class membership could be readily ascertained by reviewing RMCB's files for records of the Collection Letter and the names and addresses of its recipients during the class period.

**CONCLUSION**

97. Plaintiff was one of thousands of recipients of the Collection Letter, which is substantially identical in each instance of its use and is machine-generated by RMCB.  Plaintiff has stated a valid cause of action under FDCPA and, based on the information gleaned through discovery, it must follow that thousands of other potential plaintiffs constitute a class that meets the requirements of numerosity, commonality, and typicality.

98. Plaintiff's counsel is ready, willing, and able to provide zealous representation on behalf of the class members and no conflict of interest with respect to that representation is known or reasonably anticipated to arise in the pendency of this action.

99. A class action would be the superior method of adjudicating this matter due to the efficiency of a class action and the burden that would be imposed on the potential class members if they were expected to prosecute each of their cases individually.

100.   For the foregoing reasons, the proposed class should be certified and this cause of action should proceed as a class action.

### <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on July 25, 2018, I electronically filed the foregoing with the Clerk of Court by using the CM/ECF system, which will case the foregoing to be sent via email to the following registered participants:

Carolos A. Ortiz, Esq.
cortiz@hinshawlaw.com
West A. Holden, Esq.
wholden@hinshawlaw.com
Attorneys for Defendant, RETRIEVAL-MASTERS CREDITORS BUREAU, INC.

Michael Massey, Esq.
massey@352law.com
Attorneys for Plaintiff

**Warner, Sechrest & Butts, P.A.**

*/s/ Michael D. Sechrest*

**Michael D. Sechrest, Esq.**
Florida Bar No.: 0150710
**D. Marc Warner, Esq.**
Florida Bar No. 0151238
**Sean G. Hipworth**
Florida Bar No.: 121246
5200 SW 91st Terrace, Suite 101
Gainesville, FL 32608
T: (352) 373-5922
F: (352) 373-5921
Attorneys for Plaintiff
***Designated Email Addresses:***
Sechrest@fbswlaw.com
Marc@fbswlaw.com
KimHart@fbswlaw.com
Lisa2@fbswlaw.com
shipworth@fbswlaw.com