# UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF FLORIDA
## OCALA DIVISION

CHERYL RAFFERTY, on behalf of herself and all
others similarly situated,

        Plaintiff,

vs.

Case No. 5:17-cv-00426-PGB-PRL

RETRIEVAL-MASTERS CREDITORS BUREAU,
INC., doing business as RMCB COLLECTION
AGENCY, and John Does 1-25,

        Defendants.                                                    /

## MOTION AND SUPPORTING BRIEF FOR SUMMARY JUDGMENT
## ON BEHALF OF RETRIEVAL-MASTERS CREDITORS BUREAU, INC.

## I.      INTRODUCTION

Defendant, Retrieval-Masters Creditors Bureau, Inc. ("RMCB"), by its attorneys, hereby *respectfully* moves the Court for an Order granting it summary judgment regarding all claims alleged in the Amended Complaint, pursuant to Fed. R. Civ. P. 56. In this action involving alleged unlawful debt collection practice, Plaintiff's *sole* remaining claim is an alleged violation of §1692g of the Federal Fair Debt Collection Practices Act (hereinafter "FDCPA"), 15 U.S.C. § 1692 *et seq.*, based on a *single* letter that she received. According to Plaintiff, a letter dated June 7, 2017 (see Exh. B) regarding the collection of an unpaid, outstanding account balance owed to Swiss Colony did not comply with the FDCPA because portions of the front side of the letter requested payment "now," which overshadowed the so-called validation notice under §1692g(a) that was written on the backside of the letter; the placement of the validation notice on the backside of the letter was unnecessary and could have been placed on the front; requesting payment on the front and back of the letter overshadowed the validation notice; the content of the validation notice was insufficient; and RMCB's name would lead the reader of the subject letter into believing that Defendant was a credit reporting agency.

The Court should grant summary judgment for RMCB because the law is clear that simply requesting payment, which is the obvious purpose of collections, does not violate the FDCPA, even

when payment is requested in the initial collections letter that contains the validation notice.  The portions of the letter that Plaintiff cherry-picked in an attempt to create a violation do not, in fact, demand immediate payment, and the interpretation that Plaintiff is attempting to push on this Court is unreasonable.  Phrases in collection letters such as "Act now" or "We shall afford you the opportunity to pay this bill immediately and avoid further action against you" have consistently been held as not violating section 1692g of the FDCPA and courts have reasoned them to amount to mere harmless puffery.

Plaintiff's argument that the placement of the validation notice on the backside of the collection letter overshadows Plaintiff's rights under §1692g(a) is also without merit.  First, the FDCPA does not require that the validation notice appear on the front side of a collection letter.  Second, courts have consistently found no violation of the FDCPA when a collection letter includes a warning on the front side directing the reader to the back of the page where the §1692g validation notice is printed. Here, the June 7th collection letter included *two* warnings that were each in bold print and in all caps directing the reader to the back of the page where the §1692g validation notice was printed at the top. One of the warnings was written in the middle of the subject collection letter where it was a clear attention-getter.  After reading those warnings, even unsophisticated readers would turn the letter over to see the information on the back.  Third, while Plaintiff argues that the validation notice could have fit on the front of the letter, Plaintiff has failed to come forward with any admissible evidence to support that, and, as a result, Plaintiff's argument is mere speculation, which a court must dismiss under the framework of Fed. R. Civ. P. 56.[1]; *see Sims v. GC Servs. L.P.*, 445 F.3d 959, 963 (7th Cir. 2006) (speculation is below the Court's consideration); *see also*

---

[1] It should be noted that throughout Plaintiff's Amended Complaint, she contends that the font sizes in the June 7th collection letter differ.  In some instances, Plaintiff alleges that certain language is in font that is two or three times larger than the rest of the content.  Plaintiff also contends that the validation language on the back of the letter is in smaller font.  RMCB objects to these contentions as Plaintiff's statements are mere argument and carry no evidentiary value for the Court's consideration.  RMCB disputes that the validation notice on the back of the letter is in a smaller font and the Court is permitted to take judicial notice of the font size.

*Ellis v. England*, 432 F.3d 1321, 1326 (11th Cir. 2005); *Taylor v. Holiday Isle, LLC,* 561 F.Supp.2d 1269, n. 11 (S.D. Ala. 2008).

In what amounts to probably Plaintiff's silliest argument, she contends that the use of the words "consumer" and "office" on the back of the June 7th letter will confuse or overshadow the validation notice because Plaintiff would not know whether she is a consumer and would not understand what office means. The Court should reject these baseless arguments outright. Federal agencies such as the Consumer Financial Protection Bureau that are charged with protecting individuals such as Plaintiff state on their website, which is available for individuals like Plaintiff to review, that its function is to protect "consumers."[2] Thus, if a federal agency uses the word "consumer" in literature that is intended for individuals like Plaintiff, surely use of that word in a collection letter is not confusing or overshadowing. In addition, the phrase "see important consumer information" has been approved in the context of a collection letter complying with the requirement of the validation notice. *See Rios v. Pinnacle Fin. Group, Inc*., Case No. 05 Civ. 10290 (SHS), 2006 U.S. Dist. LEXIS 59390, *10 (S.D.N.Y. Aug. 22, 2006) Further, the use of the word "office" in the validation notice does not violate the law. In fact, the Attorney General for the State of Minnesota has approved use of the word "office" in the validation notice.[3] In making these types of ridiculous arguments, it should be noted that the FDCPA "was surely not intended to serve as a legal ATM machine." *Weber v. Prof'l Claims Bureau, Inc*., Case No. 16-CV-3018 (ILG), 2017 U.S. Dist. LEXIS 109904, *8 (E.D.N.Y. July 14, 2017).

Another reason why Plaintiff's 1692g claim should be dismissed is **because it** fails as a matter of law. Plaintiff failed to sufficiently plead the existence of a FDCPA consumer debt and is without admissible evidence that the subject unpaid, outstanding account balance qualifies as a FDCPA

---

[2] See https://www.consumerfinance.gov/about-us/the-bureau/ (Exh. C). The Court may take judicial notice of the content within Exhibits C – G, pursuant to Fed. R. Evid. 201.

[3] See https://www.ag.state.mn.us/Consumer/Publications/WhenDebtCollectorsComeCalling.asp (Exh. D).

consumer debt, which is an essential element of any FDCPA claim. In fact, Plaintiff testified in her deposition that the last time she did any business with Swiss Colony was 10 to 11 years ago. Yet, it is undisputed that the subject collection letter pertains to an account balance that was incurred in December, 2015. Thus, based on Plaintiff's testimony, the subject account balance is not hers, and she has failed to provide any evidence to conclude that the account balance (whomever it belongs to) is a FDCPA consumer debt. In other words, while Plaintiff may testify in general about what the purpose of her purchases has been historically, she still is required to provide evidence regarding the nature of subject account balance. ***Browne v. Portfolio Recovery Assocs***, CIVIL ACTION NO. H-11-02869, 2013 U.S. Dist. LEXIS 31257, *11-*12 (S.D. Tex. Mar. 7, 2013). Here, Plaintiff failed to subpoena Swiss Colony for those records regarding the subject account balance. As a result, Plaintiff has no admissible evidence to show that the account balance was incurred for personal, family or household purposes. Consequently, the Court must dismiss Plaintiff's FDCPA claim on this basis alone.

Plaintiff's 1692g claim also fails because the law is clear that credit reporting within the 30-day validation period is permissible, and alerting the accountholder as to the fact that the account has been credit reported does not violate the FDCPA. ***See FTC Statements of General Policy or Interpretation Staff Commentary on the FDCPA,*** 53 FR 50097, *50109 (Dec. 13, 1998): Cass, ***FTC Informal Staff Letter*** (December 23, 1997);[4] ***see also Smith v. Encore Capital Grp., Inc.,*** 966 F. Supp. 2d 817, 826 (E.D. Wis. 2013) (notice of negative credit reporting was not a threat to communicate false information provided the consumer had not yet disputed the debt); ***Cruz v. MRC Receivables Corp.,*** 563 F. Supp. 2d 1092, 1100 (N.D. Cal. 2008) (notice of credit reporting did not violate the FDCPA as the debt collectors could report the debt and it did not induce the consumer to take an action she would not have taken); ***Spira v. Ashwood Fin., Inc.,*** 358 F. Supp.

---

[4] Both the Statements of Policy and the Informal Letter are reproduced for the Court's review as Exhs. F and G attached hereto.

302505102v1 1002814

2d 150, 157–58 (E.D.N.Y. 2005) (statement that debt collector could credit report the debt if not paid by consumer did not overshadow the consumer's right to dispute the debt). Also, the use of RMCB's name in collection letters has been held to not cause the reader into believing that the letter was from a credit reporting agency. ***Pettit v. Retrieval Masters Creditors Bureau, Inc***., 211 F.3d 1057, 1060-1062 (7th Cir. 2000)

Lastly, Plaintiff's claim for injunctive and/or declaratory relief should be dismissed because it is reasonably undisputable that the FDCPA does not provide those types of relief. ***See Bradshaw v. Hilco Receivables, LLC***, 765 F. Supp. 2d 719, 733 (D. Md. 2011).

Given the above, RMCB maintains that the Court should grant it summary judgment, dismiss Plaintiff's claim and award RMCB whatever relief it deems appropriate.

## II. <u>STATEMENT OF UNDISPUTED MATERIAL FACTS</u>

The case at bar arises out of an unpaid, outstanding account balance owed to Swiss Colony. (Ex. B). It is unclear whether the subject account balance was incurred for personal, family or household purposes. (Ex. A, Plaintiff's Dep., p. 33, ll. 16-25; p. 34, ll. 1-25; p. 35, ll. 1-14). Swiss Colony retained RMCB to collect on the account balance. (Amended Complaint, ¶ 9). In turn, RMCB requested that an initial collection letter regarding the Swiss Colony unpaid, outstanding account balance be mailed to an individual named Cheryl Rafferty. (Answer to the Amended Complaint, ¶ 9). That letter was dated June 7, 2017. (Id.) A true and correct copy of the letter shows that content is written on both the front and back sides. (Exhibit to the Answer to the Amended Complaint). Among other things, the front of the letter includes a warning to the reader in two locations, which state, respectively:

**SEE THE REVERSE SIDE OF THIS LETTER FOR IMPORTANT INFORMATION ABOUT YOUR RIGHTS**

**SEE REVERSE SIDE FOR IMPORTANT INFORMATION.**

(Id.) The statement:

**SEE THE REVERSE SIDE OF THIS LETTER FOR IMPORTANT INFORMATION ABOUT YOUR RIGHTS**

appears in the middle of the letter and is not part of the payment tearoff, which is at the bottom of the letter. (Id.) On the back of the letter, at the top, the following content is included:

> The disclosures below are required by state or federal law. This is not intended to be a complete statement of all rights consumers may have under state and federal law.

> "This is an attempt to collect a debt. Any information obtained will be used for that purpose." This communication is from a debt collector.

> Unless you notify this office within 30 days after receiving this notice that you dispute the validity of this debt or any portion thereof, this office will assume this debt is valid. If you notify this office in writing within 30 days after receiving this notice, that the debt or any portion thereof is disputed, this office will: obtain verification of the debt or obtain a copy of a judgment and mail you a copy of such judgment or verification. If you request this office in writing within 30 days after receiving this notice, this office will provide you with the name and address of the original creditor, if different from the current creditor.

(Id.) The language at the top of the back of the letter would not fit on the front of the letter as it is currently presented. (Declaration of Jeffrey S. Wollman). RMCB is unaware for what purpose the account balances it collects upon were incurred, and RMCB has collected on account balances that were not incurred for personal, family or household purposes. (Id.)

Plaintiff believes that she is incapable of serving as a representative of the putative class. (Ex. A, Plaintiff's Dep., p. 66, ll. 12-21). Plaintiff is 62-years old. (Id., p. 9, ll. 19-20). She suffers from cancer, kidney stones and gallstones. (Id. p. 92, ll. 5-11). Plaintiff is unemployed and collects social security. (Id. p. 29, ll. 6-9). Plaintiff is the daily care taker for her 82-year old father for is on oxygen and suffers from pneumonia. (Id. p. 24, ll. 17-20). Plaintiff believes that her health and responsibilities towards her father's care would prohibit her from serving as a representative to the putative class. (Id., p. 66, ll. 12-21).

Plaintiff was not aware that this matter was filed as a class action. (Id., p. 56, ll. 8-18) (p. 60, l. 25) (p. 61, ll. 1-7) (p. 88, ll. 1-3). Plaintiff did not review or approve the Complaint. (Id., p. 58, ll. 15-25) (p. 61, ll. 12-25). Plaintiff does not review or approve any documents that are filed with the Court. (Id., p. 85, ll. 1-3). Plaintiff was not informed about what the role and responsibilities of a representative of a putative class are. (Id., p. 65, ll. 8-12) (p. 85, ll. 24-25) (p. 86, l. 1). Plaintiff was not aware that a motion for class certification was filed. (Id., p. 84, ll. 16-24) (p. 85, ll. 4-6). She does not monitor this case or her attorneys. (Id.)

Plaintiff found her attorney in this matter based on information provided to her from the Florida Bar Association. (Id., p. 32, l. 2). Plaintiff believes that the attorneys in Ocala are "adequate for nothing." (Id., p. 39, ll. 1-2). Plaintiff did not investigate whether her counsel had any experience in class actions or consumer litigation. (Id. p. 55, ll. 1-10, 23-25). Plaintiff selected her counsel because his office was easy for her to find geographically. (Id. p. 42, ll. 19-24).

Plaintiff recalls making a purchase from the subject creditor, but that purchase was made 10 to 11 years ago and was not made on credit. (Id., p. 33, l. 17-20) (p. 35, ll. 4-6). Plaintiff does not believe that the subject outstanding account balance is hers and she thinks it is a "scam." (Id. p. 34, l. 19) (p. 36, ll. 11-14). The subject account balance was incurred on December 3, 2015 in the amount of $440.90. (Exhibit to the Answer to the Amended Complaint). Plaintiff believes that the amount of the purchase she made 10 to 11 years ago from Swiss Colony was for less than $100. (Ex. A., Plainitff's Dep. p. 34, ll. 23-25; p. 35, ll. 1-5).

When Plaintiff received the subject collection letter, she did not read it entirely. (Id. p. 73, ll. 12-16). At her deposition, Plaintiff read the entire letter for the first time and agreed that the letter directed her to read the backside for important information. (Id. p. 76, ll. 8-11). Plaintiff agreed that the print on the backside of the subject collection letter was legible. (Id. p. 84, ll. 1-4). Plaintiff agreed that if she had read the entire letter that she could have contacted RMCB to exercise her validation rights, but did not because she believed the account balance was "fake" and she assumed

RMCB would not listen to her concerns. (Id., p. 81, ll. 20-21) (p. 82, ll. 11-13).(p. 104, ll. 19-25) (p. 105, ll. 1-9).

Plaintiff believes that the only problem with the subject collection letter is that it lists an account balance that she claims is not hers. (Id. p. 63, p. 2-9). She understood that this lawsuit was about that and not about a putative class or an overshadowing claim. (Id. p. 57, ll. 5-10) (p. 68, ll. 10-19).

Plaintiff was not seeking money in this lawsuit. She is not familiar with the FDCPA. Plaintiff is not aware of what remedies are available under the FDCPA. (Id. p. 47, ll. 22-25) (p. 61, ll. 8-11) (p. 66, ll. 23-25) (p. 67, ll.1-3, 15-17).

## III. <u>ARGUMENT</u>

### A. Standard Under Fed. R. Civ P. 56.

A motion for summary judgment must be granted "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Issues are genuine if a reasonable jury could find for the non-movant, and facts are material if they can affect the outcome. *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 249 (1986). Although the moving party bears the burden of demonstrating the absence of a genuine issue of material fact, in a case such as this, where the non-moving party is the plaintiff, and; therefore, bears the burden of proof at trial, that party must present affirmative evidence sufficient to establish the existence of each element of his case. *Coregis Ins. Co. v. Baratta & Fenerty, Ltd*., 264 F.3d 302, 305-06 (3rd Cir. 2001). Summary judgment may be granted against a party who fails to adduce facts sufficient to establish the existence of any element essential to that party's case, and for which that party will bear the burden of proof at trial. *Meier v. Law Offices of Weltman*, *et al*., 2011

8

WL 2039113, *2 (W.D. Pa.)[5]   Accordingly, a plaintiff cannot rely on unsupported assertions, speculation, or conclusory allegations to avoid the entry of summary judgment, *see Celotex*, 477 U.S. at 324, but rather, he "must go beyond the pleadings and provide some evidence that would show that there exists a genuine issue for trial." *Jones v. United Parcel Service*., 214 F.3d 402, 407 (3rd Cir. 2000).

To successfully oppose a motion for summary judgment, the non-movant must do more than raise a "metaphysical doubt" as to the material facts. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp*. 475 U.S. 574, 586 (1986).  In fact, summary judgment is not a dress rehearsal or practice run; *it is the put up or shut up moment in a lawsuit*, when a party must show what evidence it has that if admissible would convince a trier of fact to accept its version of the events. *Hammel v. Eau Galle Cheese Factory*, 407 F.3d 852, 859 (7th Cir. 2005).  Mere allegations or denials in the non-movant's pleadings will not meet this burden, nor will a mere scintilla of evidence supporting the non-moving party. *Anderson*., 477 U.S. at 248-252.  Rather, there must be evidence on which a jury could reasonably find for the non-movant. *McLean v. 988011 Ontario, Ltd*., 224 F.3d 797, 800 (6th Cir. 2000) (*citing Anderson*, 477 U.S. at 252).  "[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Anderson*, 477 U.S. at 248.  "Speculation does not create a genuine issue of fact, instead, it creates a false issue, the demolition of which is a primary goal of summary judgment." *Hedberg v. Indiana Bell Tel. Co*., 47 F.3d 928, 932 (7th Cir. 1995).  The Court may only consider on summary judgment evidence that would be admissible at trial.  *Winskunas v. Birnbaum*, 23 F.3d 1264, 1267-68 (7th Cir. 1994) (*citing Celotex Corp*., 477 U.S. at 324); *Jackson v. Nat'l Action Financial Services*, 441 F.Supp. 877, 884 (N.D. Ill. 2006).  As a consequence, statements based on hearsay cannot be considered for purposes of summary judgment.  *Id.*

---

[5] Although the moving party bears the initial bur-den of showing an absence of a genuine issue of material fact, it need not "support its motion with affidavits or other similar materials negating the opponent's claim." *Celotex Corp*., 477 U.S. at 323. It can meet its burden by "pointing out ... that there is an absence of evidence to support the nonmoving party's case." *Id*. at 325.

302505102v1 1002814

**B.** **The Court Should Grant Summary Judgment For RMCB Because The Law Is Clear That Simply Requesting Payment, Which Is The Obvious Purpose Of Collections, Does Not Violate The FDCPA, Even When Payment Is Requested In The Letter That Contains The Validation Notice.**

Whether a plaintiff has alleged sufficient facts to state a claim under § 1692g of the FDCPA is a legal question for the Court. ***Howard v. Client Servs***., Case No.: 0:17-cv-62425-UU, 2018 U.S. Dist. LEXIS 142827, *7 - *8 (S.D. Fla. Aug. 20, 2018). In evaluating compliance with § 1692g, the Court must read such collection letters as a whole and consider all relevant circumstances.[6] ***Id***. at *16.

In the Amended Complaint, Plaintiff alleged that the June 7th collection letter requests immediate payment. This is a complete fabrication of what that letter states. Plaintiff's theory appears to be primarily based on the following portion of the June 7th collection letter:

> Your account has been outstanding for some time and our client has informed us that this has been reported to a credit bureau. Now is the time for you to address this seriously past due account. Your payment in full in the amount of $440.90 is necessary. Please send your check or money order to us in the enclosed envelope made payable to Retrieval Masters Creditors Bureau.

(Amended Complaint). According to Plaintiff, the statement "Now is the time for you to address this seriously past due account," combined with the section of the letter that states "Amount Due" and informs the reader that the account balance has already been credit reported overshadows the validation notice, which is required under §1692g(a) of the FDCPA.

---

[6] Courts across the country apply either the least sophisticated consumer standard or the unsophisticated consumer standard in FDCPA cases. In this circuit, courts, in general, apply the least sophisticated standard. Several courts have noted that although the names of the standards vary, the tests are the same. ***See, e.g., Peter v. GC Servs. L.P***., 310 F.3d 344, 348 n.1 (5th Cir. 2002) (explaining that "[b]ecause the difference between the ["least sophisticated consumer" and "unsophisticated consumer"] standards is de minimis at most, [the court] again opt[s] not to choose between these standards."); ***Gonzales v. Arrow Fin. Servs., LLC***, 660 F.3d 1055, 1061 n.2 (9th Cir. 2011) ("The least sophisticated debtor' or 'least sophisticated consumer' standard is employed by the majority of the circuits. The Seventh Circuit employs an 'unsophisticated debtor' standard, which appears to differ from the majority test only in semantics.") (citations omitted). ***However, the least sophisticated consumer standard still holds the consumer to a standard of reasonableness, and debt collectors are not liable for "bizarre, idiosyncratic, or peculiar misinterpretations." Id***. at 1061-62.

As stated above, when reviewing a collection letter for claim of overshadowing, courts look at the entire letter as a hole, rather than isolating certain sections of the letter. *See **Zemeckis v. Glob. Credit & Collection Corp.,*** 679 F.3d 632, 635 - 638 (7th Cir. 2012). With respect to claims that a demand for payment overshadowed a validation notice, courts have distinguished between language rushing the debtor to take action—to "act now"—and provisions that set deadlines contrary or contradictory to the thirty-day validation period. ***Id.*** Statements—to 'act now'— have been found to not be actionable while provisions that set deadlines contrary or contradictory to the thirty-day validation period have been found to violate the FDCPA. ***Id.*** at 636. This is because puffery, without more, does not violate §1692g. ***Id.*** Even the most unsophisticated debtor would realize that debt collectors wish to expedite payment, and urging him to hurry does not confuse or undermine his right to his validation period. ***Id***.

In ***Taylor v. Cavalry Investment, L.L.C***., the Seventh Circuit considered a letter that contained the phrase, "Act now to satisfy this debt," next to the debt collector's phone number. 365 F.3d 572, 575 – 576 (7th Cir. 2004). The ***Taylor*** court rejected the argument that the "act now" phrase overshadowed the plaintiff's thirty-day window to contest the account balance:

> Act now to satisfy your debt is in the nature of puffing, in the sense of rhetoric designed to create a mood rather than to convey concrete information or misinformation.

***Id***. at 575. According to the ***Taylor*** court:

> Buy Now!" "Best Deal Ever!" "We Will Not Be Undersold!" as it is perfectly obvious to even the dimmest debtor that the debt collector would very much like him to pay the amount demanded straight off, sparing the debt collector any further expense.

***Id***. at 575 – 576.

Courts have also found non-actionable statements in collection letters such as "kindly let me have your immediate attention and cooperation by sending me your payment or contacting me without further delay" and "Act now to get the help you need!" and "TAKE ACTION TODAY —

11

CALL TO LEARN MORE ABOUT YOUR OPTIONS." *Vasquez v. Gertler & Gertler, Ltd*., 987 F. Supp. 652, 657 – 658 (N.D. Ill. 1997); *Lane v. Bayview Loan Servicing, LLC*, No. 15 C 10446, 2016 U.S. Dist. LEXIS 89258, *31 - *32 (N.D. Ill. Jul. 11, 2016). Those statements were found to be rhetorical devices, not overshadowing statements setting new deadlines. *Lane*, 2016 U.S. Dist. LEXIS 89258 at *31 - *32.

The alleged conduct of requesting prompt payment and informing a debtor of the options available to a debt collector does not violate 1692g(b) of the FDCPA. *Wilson v. Quadramed Corp*., 225 F.3d 350 (3rd Cir. 2000). In *Wilson*, plaintiff alleged that various paragraphs within the initial validation notice contradicted one another such that his validation rights were overshadowed. 225 F.3d at 356. The letter in *Wilson* stated:

> We shall afford you the opportunity to pay this bill immediately and avoid further action against you."

*Id*. The Third Circuit found that the letter:

> does not threaten or encourage the least sophisticated debtor to waive his statutory right to challenge the validity of the debt. Similarly, the letter here does not demand payment within a period of less than thirty days and the manner of presentation does not undercut or overshadow the message of the validation notice.

*Id*. at 360-61, *citing Terran v. Kaplan*, 109 F.3d 1428, 1432-33 (9th Cir.1997). Thus, the court affirmed the district court's dismissal of plaintiff's 1692g(b) claim under Rule 12b(6).

In *Terran*, plaintiff brought a 1692g(b) based on the following language in the initial validation notice, "Please be advised that this office represents MONTGOMERY WARD CREDIT CORP with whom you have an outstanding balance.... Unless an immediate telephone call is made to J. SCOTT ..., we may find it necessary to recommend to our client that they proceed with legal action." 109 F.3d at 1430. The court found that this language did not overshadow the plaintiff's validation rights, stating:

> [t]his language simply encourages the debtor to communicate with the debt collection agency. It does not threaten or encourage the least sophisticated debtor to waive his statutory right to challenge the validity of the debt.

12

*Id.* at 1434.

Here, the June 7th collection letter did not set any new deadline for payment. Plaintiff's representation that there was a request for an immediate payment is downright frivolous. Instead, the statement "Now is the time for you to address this seriously past due account" is no different than the statements "act now" in ***Taylor*** or "kindly let me have your immediate attention and cooperation by sending me your payment or contacting me without further delay" in ***Vasquez*** or "Act now to get the help you need!" and "TAKE ACTION TODAY" in ***Lane***. The statement in the June 7th letter is puffery and as stated by the ***Taylor*** court: even the dimmest debtor that the debt collector would very much like him to pay the amount demanded straight off, sparing the debt collector any further expense. 365 F.3d at 575 – 576. In addition, the language at issue in ***Lane***, which was found to be non-actionable, was in all caps whereas "Now is the time….." in this matter was not. Accordingly, the Court should reject Plaintiff's argument that the content of the front side of the June 7th overshadowed the validation notice.

It should be noted that Plaintiff appears to make much over nothing regarding the part of the June 7th letter that states "Amount Due." This is because including "Amount Due" is expressly required by 15 U.S.C. §1692g(a)(1). The Court cannot hold RMCB liable for including information expressly required by the FDCPA in the June 7th letter. In addition, Plaintiff also appears to take issue with the June 7th letter informing the reader that the unpaid, outstanding account balance has been credit reported. Because the letter did not require action to be taken within the 30-day validation period to avoid credit reporting, the fact that the letter informed of credit reporting that had already taken place does not overshadow the validation notice. The Court should reject any argument that the front of the June 7th letter overshadowed the validation notice.

302505102v1 1002814

**C.      Placement Of The Validation Notice On The Backside Of The Collection Letter Did Not Overshadow Rights Under §1692g(a) When The FDCPA Is Silent On Where The Validation Notice Must Appear And There Were Multiple Warnings In Bold Print And All Caps On The Front Side Of The Collection Letter Directing The Reader To The Back.**

§1692g(a) of the FDCPA, requires that certain information and rights be forwarded to the individual against whom collection activity has commenced.  The information and rights include informing of the (1) amount of the account balance; (2) the name of the creditor to whom the account balance is owed; (3) a statement that unless the person against whom collection activity has commenced, within thirty days after receipt of the notice, disputes the validity of the account balance, or any portion thereof, the account balance will be assumed to be valid by the collector; (4) a statement that if the individual who is the subject of the collection efforts notifies the collector in writing within the thirty-day period that the account balance, or any portion thereof, is disputed, the collector will obtain verification of the account balance and a copy of such verification will be mailed to that individual; and (5) a statement that, upon the individual's written request within the thirty-day period, the collector will provide him/her with the name and address of the original creditor, if different from the current creditor.  15 U.S.C. §1692g(a)(1) – (5).  These items are often referred to collectively as the "validation notice," and they must be communicated effectively. *D'Addario v. Enhanced Recovery Co, LLC*, 2011 WL 2881217, *2 (D. N.J.)   The validation notice must be in print sufficiently large to be read, and must be sufficiently prominent to be noticed.  *Wilson*., 225 F.3d at 355.  Importantly, the FDCPA does not prescribe any particular location on a collection letter where the validation notice must appear. *See* 15 U.S.C. §1692g(a); *Rabideau v. Management Adjustment Bureau*, 805 F. Supp. 1086, 1093 (W.D.N.Y. 1992).  Thus, nothing in the FDCPA prohibits the placement of the validation notice on the backside of a collection letter.  *McStay v. I.C. Systems, Inc*., 308 F.3d 188 (2nd Cir. 2002); *Christy v. Designed*

*Receivable Solutions, Inc*., Case No.: 2:17-cv-00845-APG-VCF, 2018 U.S. Dist. LEXIS 141956, *7-*9 (D. Nev. Aug. 21, 2018)[7]

The validation notice required by the FDCPA is to be interpreted from the perspective of the least sophisticated debtor.  *Id.*  Importantly, this standard does not go so far as to provide solace to the willfully blind or non-observant. *Campuzano v. Midland Credit Management, Inc*., 550 F.3d 294, 299 (3rd Cir. 2008).  Even the least sophisticated debtor is bound to read collection notices in their entirety.  *Id*.  Language in collection letters must be viewed as a whole, rather than piecemeal, to determine whether it runs afoul of the FDCPA, and unreasonable interpretations of the content of the letters will not be accepted.  *Adams v. J.C. Christensen & Assocs., Inc*., 2011 WL 1195788, at * 2 (D. Minn.); *see also Jacobson v. Healthcare Financial Services, Inc.,* 516 F.3d 85, 90 (2nd Cir. 2008) .

Here, Plaintiff contends, in general, that the validation notice was overshadowed because it appeared on the backside of the June 7th letter.  Almost all courts that have analyzed this issue; however, have found **no** violation of the FDCPA when the collection letter includes a warning on the front side directing the reader to the back of the page where the §1692g validation notice is printed.  *See Zemeckis*, 679 F.3d at 637; *Sims v. GC Servs. L.P*., 445 F.3d 959, 963 (7th Cir. 2006); *Horton v. Nationwide Recovery Systems, Inc*., 2006 WL 2844265 (E.D.N.Y. 2006) (granting Defendant's motion for summary judgment, concluding that the validation notice being placed on the back of the letter, with a warning directing the reader to the notice on the back page was not contradictory); *Sorey v. Comput. Credit, Inc*., Case No. 05 Civ. 6052 (PKC), 2006 U.S. Dist. LEXIS 46618 (S.D.N.Y. July 7, 2006) (same); *Miller v. Wolpoff & Abramson, L.L.P*., 321 F.3d 292, 310 (2d Cir. 2003), *McStay v. I.C. Systems, Inc*., 308 F.3d 188 (2nd Cir. 2002) (holding that

---

[7] The circumstances in *Christy* are on point to the allegations in this matter.  There, the court found that a letter similar to the one at issue here did not violate Section 1692g of the FDCPA. 2018 U.S. Dist. LEXIS 141956 at *7-*9.  See Ex. E, which is attached hereto, for examples of the letters that were at issue in *Christy*.

302505102v1 1002814

when a prominent instruction in the body of the letter warns that there is important information on the reverse side, a reasonable reader, even if unsophisticated, would turn the paper over and read the back). In **Sims**, 445 F.3d 959, the Seventh Circuit addressed an overshadowing claim because a collection letter that included the validation notice on the back of the letter. There, the letter's front instructed the debtor, in bold and capitalized letters to "see reverse side for important consumer information." **Id**. at 964. The **Sims** court concluded that this warning adequately advised the uninformed debtor where to locate the relevant information about his rights and mitigated his risk of confusion. **Id**. The **Sims** court arrived at this decision despite the validation notice appearing in light gray ink. **Id**. at 961. The **Sims** court stated:

> Plaintiffs repeatedly rely on a passage from **Bartlett v. Heibl** that states, "the required notice might be 'overshadowed' just because it was in smaller or fainter print than the demand for payment." **Bartlett**, 128 F.3d at 500 (**citing United States v. National Financial Services, Inc**., 98 F.3d 131, 139 (4th Cir. 1996)). This reliance ignores the bright, bold, red notice on the front of the letter advising the plaintiffs and other debtors that they should "SEE REVERSE SIDE FOR IMPORTANT CONSUMER INFORMATION." After reading that notice, even unsophisticated consumers would turn the letter over to see the information on the back, which answers the concern raised in Bartlett.

> Our cases encourage collection agencies to make the validation notice as easy to read as possible. Defendants emphasized on the front of the letter in prominent, red, bold, capital lettering that important consumer information was listed on the back. Though the validation notice text on the back is more difficult to read than the text on the front, it is adequately readable and noticeable when combined with the attention called to it on the front of the letter. If the language itself is confusing, defendants are not to blame. These wording complaints should be addressed to Congress; the validation notice tracks the statutory language almost verbatim. The district court properly concluded as a matter of law that the letter on its face did not violate the FDCPA.

**Id**. at 964.

Here, the June 7th collection letter included **two** warnings that were each in **bold print and in all CAPS** directing the reader to the back of the page where the §1692g validation notice was printed. These warnings are in prominent places – one in the middle of the letter and not jammed in between a bunch of other language where it would not stand out – and the other right above the

16

amount due. These placements of the warnings insure that they stand out and will be seen by the reader. After reading those warnings, even unsophisticated readers would turn the letter over to see the information on the back. Among other things, the front of the June 7th letter included a warning to the reader into two locations, which state, respectively:

**SEE THE REVERSE SIDE OF THIS LETTER FOR IMPORTANT INFORMATION ABOUT YOUR RIGHTS**

**SEE REVERSE SIDE FOR IMPORTANT INFORMATION.**

(DE 13-1). On the back of the letter, at the top, the following content is included:

> The disclosures below are required by state or federal law. This is not intended to be a complete statement of all rights consumers may have under state and federal law.
>
> "This is an attempt to collect a debt. Any information obtained will be used for that purpose." This communication is from a debt collector.
>
> Unless you notify this office within 30 days after receiving this notice that you dispute the validity of this debt or any portion thereof, this office will assume this debt is valid. If you notify this office in writing within 30 days after receiving this notice, that the debt or any portion thereof is disputed, this office will: obtain verification of the debt or obtain a copy of a judgment and mail you a copy of such judgment or verification. If you request this office in writing within 30 days after receiving this notice, this office will provide you with the name and address of the original creditor, if different from the current creditor.

(Id.) The June 7th letter is akin to the letter that was found to be compliant in ***Sims***. What is more, the June 7th letter is stronger than the ***Sims*** letter because it included two warnings (instead of just one in ***Sims***) directing the reader to the back of the letter and the validation language in the June 7th letter was in black print, unlike the language in ***Sims***, which was in light gray.

It should be noted that the *sole* authority, ***Rabideau***, that Plaintiff will likely rely upon to support the overshadowing/validation on back of the letter claim is an isolated district court case from the Western District of New York that was decided in 1992. That case is easily distinguishable

from the case at bar because there the collection letter was in no way similar to the June 7th letter in

this case:

> Here, while the required notice under both §§ 1692g and e(11) are contained in the documents, they appear on the reverse side of both form letters sent by Defendant. However, the required information is printed in an odd configuration, centered in the upper two-thirds of the reverse page of the initial communication and follow-up. It is printed in a light grey ink on a light shade of grey computer paper, making it difficult to read. Further, the typesize is barely 7 point (closer to six point by actual measurement), or less than 1/10" in size. The court takes judicial notice that the newsprint type for the local daily newspaper in this community is 9.4. In these circumstances, I conclude that the form used in this case fails to adequately apprise a least sophisticated consumer of the required notices.

> The notice on the front side directing the reader to the reverse side of the letter is of a small, albeit dark blue ink, type set as compared with the other information presented. But it is also at the very bottom of the paper, coincidentally within the tear-off portion of the letter to be used by the consumer in electing the credit card payment option. The reader, therefore, is just as likely to go to the reverse side of that portion of the letter which, as described above, contains an eye-catching bold typeset in larger than 12 point lettering giving directions on how to make a credit card payment of the bill. In this circumstance, the suggestion, "See Reverse Side for Important Information," which Defendant argues refers to the validation notice is, at best, ambiguous and, at worst, misleading. In either case, it is inadequate because it is neither prominent nor does it effectively convey to the least sophisticated consumer that important congressionally created rights applicable to his or her situation appear on the reverse side of the letter.

> **Given the protective purpose of the statute and the substantial deficiencies in the particular combination of form, paper color and quality, layout, print style, and ink color chosen by Defendant, the letter notice fails, by a wide margin, to meet this legal standard**.

(emphasis supplied) 805 F. Supp. at 1093 – 1094. Clearly, there were a number of other factors –

paper color, paper quality, print style and ink color – in ***Rabideau*** that Plaintiff's Motion does not

put at issue here. Thus, hard as Plaintiff may try, the comparison Plaintiff is trying to make is one

without meaning or substance given the above distinctions.

In light of the above, the Court should reject Plaintiff's overshadowing argument based on the placement of the validation notice on the back of the letter. The Court should rule in RMCB's favor.[8]

### D. Plaintiff's Motion Must Be Denied As To All Of Plaintiff's Claims Because There Are Neither Well-Pleaded Allegations Of Fact In The Complaint nor Admissible Evidence That The Subject Account Balance Is A FDCPA Consumer Debt.

In order to state a *prima facie* case under the FDCPA, a consumer debt must be at issue. ***Zimmerman v. HBO Affiliate Group***, 834 F.2d 1163, 1167 (3rd Cir. 1987); *see also **Pollice v. National Tax Funding, L.P.***, 225 F.3d 379, 400 (3rd Cir. 2000); ***Gorbaty v. Portfolio Recovery Assocs., LLC***, 2009 WL 4642371, *2 (3rd Cir.); ***Garcia v. LVNV Funding,*** LLC, 2009 WL 3079962, *3 - *5 (W.D. Tex); ***Fuller v. Becker & Poliakoff, P.A.***, 192 F. Supp. 2d 1361, 1366 (M.D. Fla. 2002); ***Martin v. Berke & Spielfogel***, 1995 WL 214453, *4 (E.D. Pa.); *see also **Bentley v. Bank of Am., N.A.***, 773 F. Supp. 2d 1367, 1371 (S.D. Fla. 2011). A consumer debt is defined as any obligation or alleged obligation of a consumer to pay money arising out of a transaction ***in which the subject of the transaction is primarily for personal, family or household purposes***. 15 U.S.C. § 1692a(5). In pleading the existence of a FDCPA, consumer debt, "threadbare recitals" or legal conclusions are insufficient. ***Dokumaci v. MAF Collection Serv**s.,* No. 8:09-cv-02488-T-24-TGW, 2010 U.S. Dist. LEXIS 37107, *4 (M.D. Fla. Apr. 14, 2010); *see also **Mesa v. Pa. Higher Educ. Assistance, No***. 16-24577-Civ-WILLIAMS/TORRES, 2017 U.S. Dist. LEXIS 205891, *13 - *15 (S.D. Fla. Dec. 13, 2017); ***Kirchner v. Ocwen Loan Servicing, LLC***, No. 1:16-cv-23950-UU, 2017 U.S. Dist. LEXIS 38010, *28 - *31 (S.D. Fla. Mar. 15, 2017). Thus, statements in the Complaint, such as "the defendant is a debt collector," "the plaintiff is a consumer," "defendant was hired to collect a debt," or "Plaintiff's debts are for personal purposes" are all conclusory statements and are insufficient to establish a *prima facie* FDCPA claim.

---

[8] It should be noted that in Plaintiff's Amended Complaint, she appears to argue that RMCB's name on the June 7th collection letter would overshadow the validation notice because RMCB's name includes the phrase "Creditors Bureau." This argument has already been rejected and the result should be no different here. ***See Pettit v. Retrieval Masters Creditors Bureau, Inc.,*** 211 F.3d 1057, 1061 – 1062 (7th Cir. 2000)

***Dokumaci*** , 2010 U.S. Dist. LEXIS 37107 at \*4; ***see also St. Pierre v. Retrieval-Masters Creditors Bureau, Inc.***, No. 15-2596 (FLW)(DEA), 2017 U.S. Dist. LEXIS 42875, \*21 - \*24 (D.N.J. Mar. 24, 2017) (holding that the circumstances surrounding how the account balance was incurred is material to whether it qualifies as a FDCPA consumer debt).

In ***Anderson v. Afni***, No. 10-4064, 2011 U.S. Dist. LEXIS 51368, (E.D. Pa. May 11, 2011), a case involving claims under the FDCPA, the court granted summary judgment to the defendant debt collector because the plaintiff did not come forward with sufficient evidence to show that a FDCPA consumer debt was at issue. The ***Anderson*** court reasoned that simply because a debt collector is collecting from an individual at his/her residential address does not give rise to a reasonable inference, for purposes of the summary judgment framework, that a consumer debt is at issue. 2011 U.S. Dist. LEXIS 51368 at \*13 - \*14. That a consumer debt exists simply because collection efforts are targeting an individual at his/her residence is nothing more than conjecture or speculation. ***Id***.; ***see also Holman v. W. Valley Collection Serv., Inc.,*** 60 F.Supp.2d 935, 937 (D. Minn. 1999) ("[I]f a communication to the debtor's home converted any commercial debt into an obligation under the FDCPA, it would be tantamount to an amendment of the clear intent of Congress.").

Also, in ***Kimmel v. Cavalry Portfolio Servs., LLC***, No. 10-680, 2011 U.S. Dist. LEXIS 55959 (E.D. Pa. May 25, 2011), the defendant debt collector moved the court for summary judgment on the plaintiff's FDCPA claims because the plaintiff suffered from dementia and did not recall the nature of the account balance that was at issue, and the plaintiff failed to conduct any discovery to show a consumer debt was involved. In granting summary judgment in favor of the defendant, the court stated:

> In sum, Plaintiff has failed to satisfy his burden of demonstrating that the money Defendant attempted to collect was a "debt" for purposes of the FDCPA. The fact that he personally cannot recall any details associated with the credit card account at issue does not absolve him of this burden. Even if Plaintiff believed he was incorrectly identified as the owner and user of the credit card account, he still could have sought discovery from Defendant regarding the substance of the transactions he allegedly made.

2011 U.S. Dist. LEXIS 55959 at \*14.

302505102v1 1002814

Here, Plaintiff has testified that the account balance at issue is not hers as it was incurred in 2015 and she last did business with Swiss Colony 10 to 100 years ago.. Statements such as "All of her debts are for personal purposes" (see Amended Complaint) are the very threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, which do not suffice. *Iqbal*, 556 U.S. at 675; *Dokumaci*, 2010 U.S. Dist. LEXIS 37107 at *4.

In addition, Plaintiff has come forward with no admissible evidence to support the existence of a FDCPA consumer debt. For that reason too, Plaintiff's Motion should be dismissed.

## IV.    CONCLUSION

**WHEREFORE**, Defendant Retrieval-Masters Creditors Bureau Inc., requests that the Court grant it summary judgment and whatever relief it deems to be just and appropriate, including, but not limited to, entering judgment in its favor given Plaintiff's position that this case may be decided as a matter of law.

### CERTIFICATE OF SERVICE

I hereby certify that the documents filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants.

Respectfully Submitted,

HINSHAW & CULBERTSON LLP

*/s/ Carlos A. Ortiz*

**Carlos A. Ortiz**
Bar No. 6293505 (IL)
cortiz@hinshawlaw.com
***ADMITTED PRO HAC VICE***
**HINSHAW & CULBERTSON LLP**
222 North LaSalle Street, Suite 300
Chicago, Illinois  60601
Tel: 312-704-3000 | Fax: 312.704-3001

*and*

**West A. Holden**
Florida Bar No. 0113569
wholden@hinshawlaw.com
**HINSHAW & CULBERTSON LLP**
100 Ashley Drive, Suite 500

21

Tampa, Florida 33602
Tel: 813-868-8845 | Fax: 305-276-1956

*Attorneys for Defendant RETRIEVAL-MASTERS
CREDITORS BUREAU, INC.*