## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## OCALA DIVISION

**CHERYL RAFFERTY, on behalf of herself and all
others similarly situated,**

      **Plaintiff,**

**v.**                                                    **Case No: 5:17-cv-00426-PGB-PRL**

**RETRIEVAL-MASTERS CREDITORS BUREAU,
INC., doing business as RMCB COLLECTION
AGENCY, and John Does 1-25,**

      **Defendants.**

_____

### REPORT AND RECOMMENDATION[1]

The parties in this FDCPA case have filed cross motions for summary judgment (Doc. 112, 113), to which they each have responded. (Doc. 114, 116, 118). Upon referral and for the reasons explained below, including that Plaintiff has failed show that Defendant's letter overshadows the required validation notice, Plaintiff's motion is due to be denied and Defendant's motion is due to be granted.

## I.     Background

Defendant, Retrieval-Masters Creditor Bureau, Inc. d/b/a/ RMBC Collection Agency, sent Plaintiff, Cheryl Rafferty, a collections letter on June 7, 2017, alleging that Plaintiff owed $440.90 to Defendant's client, Swiss Colony. (Doc. 112-1). While Plaintiff disputes both the amount of the debt and whether she owes a debt at all (Doc. 98-6 p. 34–36), her Amended Complaint is limited

---

[1] Within 14 days after being served with a copy of the recommended disposition, a party may file written objections to the Report and Recommendation's factual findings and legal conclusions. *See* Fed. R. Civ. P. 72(b)(3); 28 U.S.C. § 636(b)(1)(B); Local Rule 6.02. A party's failure to file written objections waives that party's right to challenge on appeal any unobjected-to factual finding or legal conclusion the district judge adopts from the Report and Recommendation. *See* 11th Cir. R. 3-1.

to an allegation that Defendant violated 15 U.S.C. § 1692g. (Doc. 79). According to Plaintiff, Defendant overshadowed the statutory validation notice in numerous ways throughout its letter. (Doc. 79). The language of Defendant's collections letter is undisputed. (Doc. 117).

The letter, which appears in the Appendix to this Report and Recommendation, consists of two pages. (Doc. 112-1). The front page contains the collection information[2] and a referral to "SEE THE REVERSE SIDE OF THIS LETTER FOR IMPORTANT INFORMATION ABOUT YOUR RIGHTS." (Doc. 112-1). There is then a large blank space followed by the detachable portion of the letter, which prompts payment information. (Doc. 112-1). The font size of the words in the detachable portion of the letter is generally smaller than that of the top portion of the letter, except for the much larger font used for "Amount Due," which is also bold and surrounded by a red box. (Doc. 112-1). Also in the detachable portion is a second referral to "SEE REVERSE SIDE FOR IMPORTANT INFORMATION." (Doc. 112-1). The back side of the letter contains two short paragraphs followed by the validation notice.[3] (Doc. 112-1). After a large blank white space, the back side also contains instructions for detaching the detachable portion of the letter. (Doc. 112-1).

---

[2] "We have been authorized to contact you regarding your past due account with our client, **Swiss Colony**, in the amount of **$440.90**.

Your account has been outstanding for some time and our client has informed us that this has been reported to a credit bureau. Now is the time for you to address this seriously past due account. Your payment in full in the amount of **$440.90** is necessary. Please send your check or money order to us in the enclosed envelope made payable to Retrieval Masters Creditors Bureau." (Doc. 112-1).

[3] "The disclosures below are required by state or federal law. This is not intended to be a complete statement of all rights consumers may have under state and federal law.

'This is an attempt to collect a debt. Any information obtained will be used for that purpose.' This communication is from a debt collector.

Unless you notify this office within 30 days after receiving this notice that you dispute the validity of this debt or any portion thereof, this office will assume this debt is valid. If you notify this office in writing within 30 days after receiving this notice, that the debt or any portion thereof is disputed, this office will: obtain verification of the debt or obtain a copy of a judgment and mail you a copy of such judgment or verification. If you request this office in writing within 30 days after receiving this notice, this office will provide you with the name and address of the original creditor, if different from the current creditor." (Doc. 112-1).

Generally, Plaintiff complains that the required validation notice was overshadowed by language that creates a false sense of urgency, requests a payment in full, states that the matter has been referred to a credit bureau, and superfluous language above the validation notice. Plaintiff further complains that the validation notice was overshadowed by its position on the reverse side of the collection letter and the inadequacies of the referrals to see the reverse side of the letter. Finally, Plaintiff also complains that the validation notice itself is insufficient because it could confuse consumers as to who it is directed towards and where a consumer should mail any dispute of the debt. Defendant disputes these contentions and argues that the letter meets the statutory requirements. Here, the key question is whether the validation notice was overshadowed. I submit it was not.

## II.  Summary Judgment Standard

Summary judgment is appropriate where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In applying this standard, the Court reviews "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits." *Crawford v. Carroll*, 529 F.3d 961, 964 (11th Cir. 2008). The Court considers the "evidence and reasonable factual inferences drawn therefrom in a light most favorable to the non-moving party." *Id.* The moving party bears the initial burden of establishing the nonexistence of a triable issue of fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). In the FDCPA context, a triable issue of fact exists when "there are two sets of reasonable inferences that could be drawn from a dunning letter, and one set of inferences would result in a violation of [the FDCPA] while the other would not." *Kuehn v. Cadle Co.*, 335 Fed. App'x 827, 830 (11th Cir. 2009). If the movant is successful on this score, the non-moving party must then come forward with sufficient evidence to establish the existence of the elements on which she will

bear the burden of proof at trial. *Id.* at 322–23. The non-moving party may not simply rest on the pleadings, but must use evidence such as affidavits, depositions, answers to interrogatories, or admissions on file to show that there is a genuine issue of material fact that remains for trial. *Id.* at 324.

## III.   Discussion

The Fair Debt Collection Act (FDCPA) requires debt collectors to give certain notices, commonly referred to collectively as the validation notice, when they collect debts. *See* 15 U.S.C. § 1692g. For example, a debt collection letter must contain notice that the consumer may dispute the debt by writing to the collector within thirty days of receiving the notice. 15 U.S.C. § 1692g(a). Further, debt collectors are prohibited from making communications that overshadow or are inconsistent with the validation notice. 15 U.S.C. § 1692g(b); *see also Wilson v. Quadramed Corp.*, 225 F.3d 350, 354 (3d Cir. 2000) ("Thus, in order to comply with the requirements of section 1692g, more is required than the mere inclusion of the statutory debt validation notice in the debt collection letter—the required notice must also be conveyed effectively to the debtor.").

Courts, including the Eleventh Circuit, use a "least sophisticated consumer" standard to evaluate whether a debt collector violated the FDCPA. *Moore v. Seterus, Inc.*, 711 Fed. App'x 575, 579 (11th Cir. 2017). While the Eleventh Circuit itself has not yet analyzed whether a communication overshadows or is inconsistent with a validation notice, courts in our Circuit apply the same least sophisticated consumer standard in overshadowing cases. *See Montgomery v. Fin. Asset Mgmt. Sys., Inc.*, Case No. 1:16-cv-4652, 2017 WL 8186693, at *5 (N.D. GA Dec. 12, 2017); *Berkseth v. Cont'l Cent. Credit, Inc.*, 119 F. Supp. 3d 1316, 1320 (M.D. Fla. 2015).

The question under the least sophisticated consumer standard is whether the language "would make the least sophisticated consumer uncertain as to his or her rights." *Shimek v.*

*Weissman, Nowack, Curry & Wilco, P.C.*, 323 F. Supp. 2d 1344, 1349 (N.D. GA 2003); *see also Bartlett v. Heibl*, 128 F.3d 497, 500 (7th Cir. 1997). However, the least sophisticated consumer "is neither irrational nor a dolt." *Ellis v. Solomon & Solomon, P.C.*, 591 F.3d 130, 135 (2d Cir. 2010). Indeed, "'the least sophisticated consumer' can be presumed to possess a rudimentary amount of information about the world and a willingness to read a collection notice with some care" and "the standard also prevents liability for bizarre or idiosyncratic interpretations of collection notices by preserving a quotient of reasonableness." *LeBlanc v. Unifund CCR Partners*, 601 F.3d 1185, 1194 (11th Cir. 2010) (quoting *Clomon v. Jackson*, 988 F.2d 1314, 1319 (2nd Cir. 1993) and *United States v. Nat'l Fin. Servs., Inc.*, 98 F.3d 131, 136 (4th Cir. 1996)).

The Court will first address the language of Defendant's letter, then its format and structure, and finally the validation notice itself to determine whether the letter would confuse a least sophisticated consumer as to her rights.

### A.    Language of the Letter

Plaintiff first complains that the validation notice is overshadowed by language which creates a false sense of urgency. Generally, language overshadows the validation notice when it "stands in contradiction to the FDCPA, which provides consumers a thirty day period to decide to request validation." *Miller v. Payco-Gen. Am. Credits, Inc.*, 943 F.2d 482, 484 (4th Cir. 1991). This typically happens when a letter demands the consumer to take some action within thirty days.[4] Also, language of immediacy can overshadow the validation notice if it is insistent enough, even

---

[4] *See, e.g.*, *United States v. Nat'l Fin. Servs.*, 98 F.3d 131, 139 (4th Cir. 1996) ("The deadlines—generally ten days from the date of the notice—conflicted with the thirty days allowed in the validation notice itself, which was printed on the back of the form."); *Russell v. Equifax A.R.S.*, 74 F.3d 30, 34 (2d Cir. 1996) (concluding that "[t]he consumer was thus presented with two different and conflicting statements" where "if she believed what was printed on the front of the notice, she would fear that unless she decided not to dispute the claim *and* to pay it within 10 days, the debt she owed would be 'posted' to her credit file"); *Graziano v. Harrison*, 950 F.2d 107, 111 (3d Cir. 1991) (finding that a demand of payment within ten days created a "juxtaposition of two inconsistent statements" that violated § 1692g).

without specifying a time frame that is less than the thirty days provided by the validation notice. *See Miller*, 934 F.2d at 484. ("A consumer who received Payco's form could easily be confused between the commands to respond 'immediately,' 'now,' and 'today,' and the thirty day response time contemplated by the statute.").

Here, Defendant's collection letter did not demand any action within a specified timeframe inconsistent with the validation notice. Instead, Plaintiff points to several phrases which she alleges create urgency. For example, the letter states: "Now is the time for you to address this seriously past due account." (Doc. 112-1). But this sentence is not inconsistent with the validation notice because addressing the account does not preclude disputing the debt. Thus, this sentence does not lead a least sophisticated consumer to believe that she must waive her statutory rights in order to comply with the letter. *See Sandlin v. Shapiro & Fishman*, 919 F. Supp. 1564, 1568 (M.D. Fla. 1996) (noting that statutory rights are overshadowed where "an unsophisticated debtor might believe he had no options but to pay the disputed amount" but not where a provision of the collection letter "does not prevent the debtors from disputing the debt").

Similarly, language such as "outstanding for some time" and "seriously past due" do not overshadow the validation notice because they describe the amount of time that has already passed, not how much time is available to the debtor after receiving the letter. (Doc. 112-1). The language does not create any confusion as to whether the consumer has thirty days to dispute the debt. It is also distinguishable from the "screaming headlines, bright colors and huge lettering" on a letter which "demands 'IMMEDIATE PAYMENT' and commands the consumer to 'PHONE US TODAY,' emphasized by the word 'NOW' emblazoned in white letters nearly two inches tall against a red background" which appeared on the letter in the *Miller* case, upon which Plaintiff relies. Thus, because the letter does not demand payment within thirty days or otherwise demand

6

immediate payment, Plaintiff has not demonstrated any false sense of urgency that overshadows the validation notice.

Second, Plaintiff complains that the validation notice is overshadowed by the statement that "payment in full in the amount of **$490.90** is necessary." (Doc. 112-1) (emphasis in original). The FDCPA does not prohibit creditors from requesting payment, even immediate payment, so long as the request does not overshadow the validation notice. *Durkin v. Equifax Check Servs., Inc.*, 406 F.3d 410, 417 (7th Cir. 2005); *Savino v. Comput. Credit, Inc.*, 164 F.3d 81, 85–86 (2d Cir. 1998). Simply put, "[d]emanding payment for an uncontested, overdue debt is an entirely valid tool available to debt collectors." *Durkin*, 406 F.3d at 417. Like in *Durkin*, Defendant's request for payment did not "contain any overt misinformation, apparent contradiction, or noticeable lack of clarity concerning the validation period or the debtor's rights under § 1692g." *Id.* at 417; (Doc. 112-1). Because a least sophisticated consumer would not be confused that a debt collector would like to be paid if she does not exercise her rights on the reverse side of the letter, Plaintiff has not met her burden to show that Defendant's request for payment overshadowed the validation notice.[5]

Third, Plaintiff complains that the validation notice is overshadowed by the letter's statement that the debt "has been reported to a credit bureau." Threats tend to overshadow validation notices when they demand action immediately or within thirty days, in contradiction to the validation notice. *E.g. Russell v. Equifax A.R.S.*, 74 F.3d 30, 34–35 (2d Cir. 1996); *Swanson v. Oregon Credit Serv., Inc.*, 869 F.2d 1222, 1225–26 (9th Cir. 1988). On the other hand, circuit

---

[5] Plaintiff relies heavily on *Savino*, which is distinguishable with the instant case in two ways. *Savino v. Comput. Credit, Inc.*, 164 F.3d 81, 85–86 (2d Cir. 1998). First, Defendant's letter did not demand immediate payment. (Doc. 112-1). Second, Defendant's letter specifically advises the consumer that the important information on the reverse side of the letter is, in fact, about the consumer's rights. (Doc. 112-1). On the other hand, the letter in *Savino* demanded immediate payment and "no indication [was] given on the front of the letter as to the nature of the notice, i.e., the debtor's rights." *Wilson v. Quadramed Corp.*, 225 F.3d 350, 357 (3d Cir. 2000) (referring to *Savino*); *Savino*, 164 F.3d at 85–86 (2d Cir. 1998).

courts agree that "letters [that] encourage debtors to pay their debts by informing them of the possible negative consequences of failing to pay" do not overshadow a validation notice. *McMurray v. ProCollect, Inc.*, 687 F.3d 665, 671 (5th Cir. 2012) (quoting *Durkin*, 406 F.3d at 417–18).

Further, Defendant's letter did not threaten that the debt would be reported to a credit agency unless Plaintiff waived her statutory rights. This fact is a distinction from most of Plaintiff's cited case law. The facts of this case are further distinguished because the letter presents the report to the credit bureau as something that has already happened rather than a threat of what will happen unless the consumer pays. (Doc. 112-1). And unlike *Johnson*, upon which Plaintiff relies, the letter does not imply that credit damage can only be averted or undone by paying. *See Johnson v. Equifax Risk Mgmt. Servs.*, Case No. 00 Civ. 7836, 2004 WL 540459, at *5 (S.D.N.Y. Mar. 16, 2004).

Fourth, Plaintiff complains that language on the back side of the letter above the validation notice overshadows the validation notice. Plaintiff relies primarily on a case in which "[t]he validation notice begins on the reverse side of the Letter four paragraphs below a text box with bold instructions to return to the front page of the letter" and where the validation notice was less emphasized than the text surrounding it. *Sharpe v. Midland Credit Mgmt.*, 269 F. Supp. 3d 648, 655–56 (E.D. Pa. 2017). In that case, the validation notice was also broken into several paragraphs so that the entire page consisted of similarly sized paragraphs, many of which were not the validation notice. Here, however, the validation notice is the largest and most visible body of text on the reverse side of the page, where consumers are directed to look for information about their rights. There are only two short paragraphs above the validation notice, and one of them refers to the "disclosures below," directing the consumer's attention down to the validation notice. Plaintiff,

8

therefore, has failed to show that the additional text on the reverse side of the page would make a least sophisticated consumer uncertain as to her rights.

### B.     Format and Structure of the Letter

Plaintiff also complains that the validation notice is overshadowed by its placement on the reverse side of the letter. Specifically, Plaintiff argues that the referrals to see the reverse side are inadequate for two reasons. First, Plaintiff points to the second referral to the reverse side, which does not specify that the "important information" is about the consumer's rights and which lines up with the location of payment information on the reverse side. (Doc. 112-1). Plaintiff argues that this second referral could cause a consumer to believe that the two referrals are duplicates of each other, therefore disregarding the first referral and concluding that the important information on the reverse side is actually payment information, not information about her rights. Second, Plaintiff points to language on the reverse side which states, "This is not intended to be a complete statement of all rights consumers may have under federal and state law." (Doc. 112-1). Plaintiff argues that this language conflicts with the first referral, and that consumers would therefore disregard the validation notice.

Generally, this Court has previously rejected the "contention that the collection letter violates the FDCPA merely because the required validation notice is contained on the reverse side of the letter" where "[t]he front of the letter clearly states: 'NOTICE: SEE REVERSE SIDE FOR IMPORTANT INFORMATION.'" *Molina v. Healthcare Revenue Recovery Grp., LLC*, Case No. 8:11-cv-1642, 2012 WL 3067883, at *2 n.2 (M.D. Fla. Jul. 27, 2012); *see also McStay v. I.C. Sys., Inc.*, 308 F.3d 188, 191 (2d Cir. 2002). Here, the first referral to the reverse side is prominently placed in the middle of the page and emphasized by bold font. (Doc. 112-1). In fact, the first

referral in Defendant's letter is even clearer than the one in *Molina* because it additionally informs the consumer that the important information is "about your rights."[6] (Doc. 112-1).

Furthermore, by assuming that a least sophisticated consumer would recklessly disregard clear and prominent directions to important information about her rights, Plaintiff mischaracterizes the least sophisticated consumer standard. *See LeBlanc v. Unifund CCR Partners*, 601 F.3d 1185, 1194 (11th Cir. 2010); *Molina*, 2012 WL 3067883 at *2 n.2. In fact, Plaintiff's arguments seem more like the "bizarre or idiosyncratic interpretations" of a collection letter that the standard is supposed to protect against. *LeBlanc*, 601 F.3d 1185, 1194 (quoting *United States v. Nat'l Fin. Servs., Inc.*, 98 F.3d 131, 136 (4th Cir. 1996)). Indeed, Plaintiff provides no case law that supports her position.[7] Therefore, Plaintiff does not meet her burden of establishing that the referrals to the reverse side of the letter would make a least sophisticated consumer uncertain as to her rights.

While the Plaintiff did not otherwise complain about the format and structure of the collection letter, they are important factors in determining whether the validation notice is overshadowed. *See Miller v. Payco-Gen. Am. Credits, Inc.*, 943 F.2d 482, 484–85 (4th Cir. 1991). Multiple circuit courts have reasoned that the validation notice is less likely to be overshadowed when it is the same font and size as the rest of the letter. *See, e.g.*, *McMurray v. ProCollect, Inc.*, 687 F.3d 665, 671 (5th Cir. 2012); *Wilson v. Quadramed Corp.*, 225 F.3d 350, 356 (3d Cir. 2000); *Terran v. Kaplan*, 109 F.3d 1428, 1434 (9th Cir. 1997). Generally, "where the validation notice is

---

[6] While Plaintiff additionally argues that there was room for the validation notice on the front side of the letter, Plaintiff presents no case law which evaluates availability on the front side as a factor in determining whether a validation notice on the back side is overshadowed.

[7] The only case law that Plaintiff cites is *Rabideau*, in which the referral to the reverse side was "inadequate because it is neither prominent nor does it effectively convey to the least sophisticated consumer that important congressionally created rights applicable to his or her situation appear on the reverse side of the letter." *Rabideau v. Mgmt. Adjustment Bureau*, 805 F. Supp. 1086, 1093 (W.D.N.Y. 1992). Because the first referral is clear, prominent, and effectively conveys that the reverse side of the letter has "important information about your rights," *Rabideau* is clearly distinguishable.

the same size, font, and color type-face as the other paragraphs, the Plaintiffs must point to some structural or formatting element of the collection letter that overshadows the disclosure of Plaintiffs' rights." *Berkseth v. Cont'l Cent. Credit, Inc.*, 119 F. Supp. 3d 1316, 1321 (M.D. Fla. 2015).

Here, Defendant's collection letter used the same font and size throughout the main body of text on the front and back sides of the letter, including the validation notice. (Doc. 112-1). The validation notice is the same color as the rest of the letter with the same color of background, and no technique makes it difficult to read. (Doc. 112-1). In fact, one of the most substantial uses of emphasis in the letter is the referral to see the reverse side of the letter, which leads the consumer to the validation notice. (Doc. 112-1). None of the other emphasized elements of the letter contain the kind of substantive information that could confuse a least sophisticated consumer as to her rights. (Doc. 112-1). Thus, Plaintiff points to no formatting element that overshadows the validation notice

## C.     Sufficiency of the Validation Notice

Additionally, Plaintiff has two complaints about the sufficiency of the validation notice itself. First, Plaintiff complains that the validation notice is not effectively conveyed because a least sophisticated consumer would not know who it is directed to. In support, Plaintiff cites to case law in which there was no indication on the front or back that the letter contained information about the consumer's rights, and the validation notice was printed in smaller ink of a different color. *Riveria v. MAB Collections, Inc.*, 682 F. Supp. 174, 177 (W.D.N.Y. 1998). Here, the letter states that there is important information on the reverse side of the letter about "your rights" and the reverse side of the letter says that the debt is disputed "if you notify this office in writing." (Doc. 112-1). The information is clearly stated without any obfuscating technique. (Doc. 112-1).

Second, Plaintiff complains that the validation notice is not effectively conveyed because consumers could be confused as to where to mail a dispute. The validation notice instructs consumers to send disputes to "this office," but Plaintiff argues that this is confusing because the letter lists two addresses for the debt collector and because the name of the debt collector's client, Swiss Colony, appears in the letter. However, Plaintiff does not argue that either of the addresses for the debt collector are misleading or incorrect. Furthermore, the name of the creditor to whom the debt is owed is one of the statutorily required elements of the validation notice, and the letter is not misleading in identifying Swiss Colony as "our client" and the creditor. 15 U.S.C. § 1692g(a)(2); (Doc. 112-1). Finally, Plaintiff's case law is distinguishable because here, Defendant's validation notice did not misstate or omit statutorily required information. *See Schweer v. HOVG, LLC*, Case No. 3:16-cv-01528, 2017 WL 2906504 at *8–9 (M.D. Pa. Jul. 7, 2017*); Chauncey v. JDR Recovery Corp.*, 118 F.3d 516, 519 (7th Cir. 1997). Thus, Plaintiff has still failed to prove that the validation notice would make a least sophisticated consumer uncertain as to her rights.

## IV.    Recommendation

For these reasons stated above, I submit that Plaintiff has failed to meet her burden of establishing that Defendant's letter would make a least sophisticated consumer uncertain as to her rights. Because there is no dispute as to a material fact and because the letter does not create "two sets of reasonable inferences that could be drawn from the dunning letter" as to the consumer's rights, I further submit that summary judgment in favor of Defendant is appropriate. *Kuehn v. Cadle Co.*, 335 Fed. App'x 827, 830 (11th Cir. 2009).

It is, therefore, **RECOMMENDED** that Plaintiff's motion for summary judgment be **denied** (Doc. 112) and that Defendant's motion for summary judgment be **granted** (Doc. 113).

**DONE** and **ORDERED** in Ocala, Florida on February 15, 2019.

PHILIP R. LAMMENS
United States Magistrate Judge

Copies Furnished to:

Presiding District Judge
Counsel of Record
Unrepresented Parties
Courtroom Deputy

**Appendix**

